UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMCO INSURANCE COMPANY, *et al.*,

                Plaintiffs,

     v.

COBANK, ACB,

                Defendant.

No. 16-cv-4422-LTS-HBP

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'[1] MOTION
FOR SUMMARY JUDGMENT AS TO DAMAGES METHODOLOGY**

---

[1] Plaintiffs are AMCO Insurance Company, American Family Life Assurance Company of Columbus, Americo Financial Life and Annuity Insurance Company, Athene Annuity and Life Company, Bank of Utica Investment Subsidiary, Ltd., Beaumont Health, Bio-Rad Laboratories, Inc., Continental Casualty Company, Crestbrook Insurance Company, Dedham Institution for Savings, Ephrata National Bank, Erie Family Life Insurance Company, Federated Life Insurance Company, Great Southern Life Insurance Company, Health Care Service Corporation, Metropolitan Life Insurance Company, Mutual of America Life Insurance Company, Nationwide Life and Annuity Insurance Company, Nationwide Life Insurance Company, Nationwide Mutual Insurance Company, The Northwestern Mutual Life Insurance Company, Ohio National Life Assurance Corporation, The Ohio National Life Insurance Company, Scottsdale Insurance Company, Scottsdale Surplus Lines Insurance Company, Tauck, Inc., Thrivent Financial for Lutherans, Veterinary Pet Insurance Company, Victoria Fire & Casualty Company, and Waukesha State Bank.

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY STATEMENT OF UNDISPUTED FACTS ........................................................... 2

I.   THE ORIGIN OF THE PARTIES' DISPUTE ................................................................. 2

II.  THE COMPETING EXPERT METHODOLOGIES ...................................................... 3

ARGUMENT .................................................................................................................................. 5

I.   LEGAL STANDARD FOR SUMMARY JUDGMENT ................................................. 5

II.  DIFFERENCES BETWEEN THE PARTIES' DAMAGES
     METHODOLOGIES CAN BE RESOLVED AS A MATTER
     OF LAW ........................................................................................................................... 5

     A.   APPLICABLE LAW ............................................................................................ 5

     B.   A REINVESTMENT RATE SHOULD BE DERIVED FROM BONDS
          IN THE SAME RATING CATEGORY AS THE NOTES ................................... 9

     C.   A REINVESTMENT RATE SHOULD BE DETERMINED BASED ON
          THE REMAINING DURATION OF THE NOTES ........................................... 11

     D.   A REINVESTMENT RATE SHOULD BE DETERMINED BY AN
          OBJECTIVE STANDARD, RATHER THAN BY REFERENCE TO
          PLAINTIFFS' SUPPOSED INVESTMENT PRACTICES ................................ 12

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re A.J. Lane & Co., Inc.*,
   113 B.R. 821 (Bankr. D. Mass. 1990) ...................................................................................6

*Arthur v. Burkich*,
   520 N.Y.S.2d 638 (N.Y. App. Div. 1987) ............................................................................5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).............................................................................................................5

*In re Duralite Truck Body & Container Corp.*,
   153 B.R. 708 (Bankr. D. Md. 1993) .....................................................................................6

*Imperial Coronado Partners, Ltd. v. Home Fed. Sav. and Loan Ass'n*
   *(In re Imperial Coronado Partners, Ltd.)*, 96 B.R. 997 (B.A.P. 9th Cir. 1989)....................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).............................................................................................................5

*In re Outdoor Sports Headquarters, Inc.*,
   161 B.R. 414 (Bankr. S.D. Ohio 1993).....................................................................6, 11, 12

*Premier Entm't Biloxi LLC v. U.S. Bank, N.A. (In re Premier Entm't Biloxi LLC)*,
   445 B.R. 582 (Bankr. S.D. Miss. 2010)....................................................................... passim

*R.M. Railcars LLC v. Marcellus Energy Servs., LLC*,
   No. 1:14-cv-01167 (BKS/RFT), 2015 WL 4508451 (S.D.N.Y. July 24, 2015) ..................8

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
   743 F.3d 11 (2d Cir. 2014)...................................................................................................5

*Schonfeld v. Hilliard*,
   218 F.3d 164 (2d Cir. 2000)............................................................................................ 8-9

*Teachers Ins. and Annuity Ass'n of Am. v. Ormesa Geothermal*,
   791 F. Supp. 401 (S.D.N.Y. 1991).............................................................................. passim

*Windsor v. United States*,
   699 F.3d 169 (2d Cir. 2012).................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 ................................................................................................................1, 5

Restatement (Second) of Contracts § 350 (1981) ............................................................8, 11, 12

Plaintiffs respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 56 for summary judgment against Defendant CoBank, ACB ("CoBank"), seeking to have the Court determine the methodology for damage calculation should CoBank be found liable on Counts I and/or II of Plaintiffs' Second Amended Complaint.

## PRELIMINARY STATEMENT

This dispute concerns CoBank's April 15, 2016 redemption (the "Redemption") of subordinated notes (the "Notes") due April 16, 2018 (the "Maturity Date"). Assuming that CoBank is eventually found liable for breach of contract and/or the implied covenant of good faith and fair dealing for the Redemption (whether upon Plaintiffs' Motion for Summary Judgment as to Liability or at trial), the Court may now determine as a matter of law the key elements of the method of calculating Plaintiffs' damages, and in particular, the mitigation portion of that calculus, as measured by an appropriate reinvestment imputed to Plaintiffs. Based on facts similar to those here, *Teachers Ins. and Annuity Ass'n of Am. v. Ormesa Geothermal*, explicitly set forth that the calculation of an injured plaintiff's reinvestment must focus on the yield of an "investment with similar characteristics" that was available "at the time of the breach." 791 F. Supp. 401, 416 (S.D.N.Y. 1991). CoBank's expert's attempts to interject irrelevant factors – ▮▮▮▮▮▮▮▮▮▮ – and to ▮▮▮▮▮▮▮▮▮▮ do not create an issue of fact, and should be rejected as contrary to the holding of *Ormesa*.

Both CoBank and Plaintiffs have proffered expert witnesses to determine damages by calculating the ▮▮▮▮▮▮▮▮▮▮

███████.[2] ██████████████████████████████████████████████

████████████████████████

Three elements separate Plaintiffs' expert, G. Grant Lyon, from CoBank's expert, John D. Finnerty, ████████████████████████████████████████████████

<u>First</u>, Lyon applies an objective standard for investment objectives of the Plaintiffs, █████ ████████████████████████████████████████████████████████████████████.

<u>Second</u>, Lyon calculates a Reinvestment Rate using "A" rated bonds, a rating category within which the Notes were rated for their duration. ████████████████████████████████ ████████████████. <u>Third</u>, Lyon examines only those bonds due to mature in April 2018, as were the Notes, ████████████████████████████████████████████████████ ████████████████ These disagreements (none of which involve any factual dispute) can be resolved in the Plaintiffs' favor based on *Ormesa* and its progeny. Thus, Plaintiffs respectfully request that the Court adopt Lyons's methodology for calculating damages.

## SUMMARY STATEMENT OF UNDISPUTED FACTS[3]

### I.   THE ORIGIN OF THE PARTIES' DISPUTE

On April 18, 2008, CoBank issued the Notes. SUMF, ¶ 77. The Notes were governed by the terms set forth in a form of security (the "<u>Security</u>") that permits CoBank to redeem the Notes prior to the Maturity Date only "following a Regulatory Event." *Id.*, ¶¶ 78, 81. On March 11, 2016, CoBank announced that it would redeem the Notes on April 15, 2016, erroneously claiming that a Regulatory Event had occurred. *Id.*, ¶¶ 304-06, 315.

---

2   Plaintiffs' proffered expert also calculated the present value of each of the elements of damages.

3   Plaintiffs' Memorandum of Law in support of Plaintiffs' Motion for Partial Summary Judgment as to Liability, filed contemporaneously herewith, along with Plaintiffs' Statement of Undisputed Material Facts ("<u>SUMF</u>"), contains a more complete statement of undisputed facts, to which Plaintiffs respectfully refer the Court for additional background. Capitalized terms not otherwise defined herein have the meaning ascribed to them in the SUMF.

CoBank conducted the Redemption, in order, among other reasons, t███████████████████████████████████████████████ Plaintiffs here were deprived of nearly $38 million in interest owed to them if CoBank had not conducted the unlawful Redemption. *Id.*, ¶¶ 332-34.

## II. THE COMPETING EXPERT METHODOLOGIES

Each of the purported experts have determined damages by calculating the ██████████████████████████████████████████████████████████████████████████████████████████████████████████. *Id.*, ¶¶ 331, 339-41. Both experts reached conclusions about ████████████████████████████████████████[4]████████████████████████████████████ *Id.*, ¶¶ 331, 335-36, 340-43, 353-54, 356-57. ███████████████████████████████████████████████████ *Id.*, ¶¶ 331, 335-36, 355, 358.

Lyon calculated an objective Reinvestment Rate based on the yields available in the marketplace, during the period of April 1 to April 15, 2016, for U.S. dollar-denominated corporate debt securities that were scheduled to mature in April 2018 and bore a credit rating in the "A" rating category.[5] *Id.*, ¶¶ 331, 335-36. Lyon's Reinvestment Rate is supported by, *inter alia*, the Bloomberg, L.P. ("Bloomberg") U.S. corporate yield curve, as of April 15, 2016, for debt securities with a composite rating of "A." *Id.*, ¶¶ 336-37, 361, 364-65.

Without sufficient basis, ███████████████████████████████████████████████████████████████████████████████." *Id.*, ¶¶ 341-42. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.*, ¶¶ 343, 355-58, 361.

---

[4] Yield is "the income return on an investment, such as the interest . . . received from holding a particular security. The yield is usually expressed as an annual percentage rate based on the investment's cost, current market value or face value." SUMF, ¶ 359.

[5] ████████████████████████████ *Id.*, ¶¶ 374-75.

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ *Id.*, ¶¶ 343, 353-54, 356-57.

A "BBB" rating is in a lower rating category than an "A" rating, and represents S&P's determination that the subject security is riskier to investors than an "A" rated security. *See id.*, ¶¶ 376, 378, 380. The Notes were never rated by S&P lower than the "A" category. *Id.*, ¶ 346. Nevertheless, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████ *Id.*, ¶¶ 344-45, 353, 356. █████████████████████████

█████████████████████████████ as of March 10, 2016, the day before the announcement of the Redemption. *Id.*, ¶ 394. ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████ *Id.*, ¶¶ 394-97. An indicative price, however, is distinct from, and inferior to (for purposes of calculating damages), a transaction price reflecting actual trades, because an indicative price is obtained from a bond pricing service ██████████████████████████ *Id.*, ¶¶ 405, 413. As discussed herein, the █████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████ *Id.*, ¶¶ 397-401, 403-404.

4

Though the two experts employ substantially "██████████████████████████," *see id.*, ¶ 366, judicial intervention is necessary to permit the calculation of damages.

## ARGUMENT

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that showing is made, the non-movant, to oppose the motion successfully, "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations omitted).

### II. DIFFERENCES BETWEEN THE PARTIES' DAMAGES METHODOLOGIES CAN BE RESOLVED AS A MATTER OF LAW

#### A. APPLICABLE LAW

It is well settled that a borrower does not have a right to prepay an instrument in the absence of a prepayment clause. *See Arthur v. Burkich*, 520 N.Y.S.2d 638, 639 (N.Y. App. Div. 1987) (citing cases). The Security's narrow redemption right is a species of "no-call" provision that "allocate[s] between the borrower and the lender the risk associated with future interest rate fluctuations and provide[] an essential protection to the noteholder." *Premier Entm't Biloxi LLC*

*v. U.S. Bank, N.A. (In re Premier Entm't Biloxi LLC)*, 445 B.R. 582, 640 (Bankr. S.D. Miss. 2010).

New York law provides that a party injured by a breach of contract should be placed in the same economic position it would have been in had the contract been performed. *Ormesa*, 791 F. Supp. at 415 (citing *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 626 F. Supp. 1229, 1236 (S.D.N.Y. 1986)). From this principle, the *Ormesa* court determined that the plaintiff in that case was entitled to "lost interest income . . . measured as the difference between (a) the interest income [the plaintiff] would have earned had the contract been performed, and (b) the interest income [the plaintiff] would be deemed to have earned by timely mitigating its damages—*i.e.*, *by making an investment with similar characteristics at the time of the breach*." *Id*. at 416 (emphasis added); *see also Imperial Coronado Partners, Ltd. v. Home Fed. Sav. and Loan Ass'n (In re Imperial Coronado Partners, Ltd.)*, 96 B.R. 997, 1001 (B.A.P. 9th Cir. 1989) (finding that "actual damages" resulting from an impermissible prepayment of a loan consisted of "the difference between the contract rate and the market rate from the date of prepayment until the date of maturity"); *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 424 (Bankr. S.D. Ohio 1993) ("Bankruptcy courts have determined that actual damages are measured by the difference between: 1) the market rate of interest on the prepayment date, and 2) the contract rate, for the remaining term of the loan, then discounted to arrive at present value.") (collecting cases); *In re Duralite Truck Body & Container Corp.*, 153 B.R. 708, 714 (Bankr. D. Md. 1993); *In re A.J. Lane & Co., Inc.*, 113 B.R. 821, 829 (Bankr. D. Mass. 1990) (citations omitted).

The Teachers Insurance and Annuity Association of America ("TIAA"), the *Ormesa* plaintiff, asserted breach of contract for failure to continue negotiating a loan transaction despite having signed a commitment letter agreement that specified a blended rate of 10.64%. *Id*. at 404.

6

After finding Ormesa Geothermal liable for breach of contract, the court addressed the quantum of damages, settling on the approach identified above.

In determining the interest income to use in calculating TIAA's damages, the court held that an appropriate reinvestment "should have investment characteristics as close as possible to the original investment." *Id*. at 416. Notably, the court did not take into account TIAA's investment risk profile; rather the inquiry focused entirely on the characteristics of the reinvestment. On that record, the court found that these characteristics included the 10.64% contractual interest rate, for the same term of the contemplated loan, to an obligor with a credit quality of an "Aa" credit rating. *Id*. Concluding, however, that "at the time of the breach, there was no alternative investment with these characteristics that TIAA could make, or other loans with similar risk-reward characteristics" the court determined that damages must account for "not only the general drop in interest levels, but also the lost opportunity to lend at [1.5%] over Treasuries to an entity of approximately Aa creditworthiness." *Id*. Therefore, the court "adopt[ed] as the interest rate at the time of the breach the interest rate that prevailed in the market place at that time for 'Aa' corporate obligations at a maturity and average life similar to that set forth in the Commitment Letter." *Id*.; *see also Premier*, 445 B.R. at 589, 642-43, n. 240 (endorsing methodology for calculating damages arising from an impermissible early repayment of notes as "the present value difference between the market interest rate and the contract interest rate [] at the time the [n]otes were repaid," and determining that "market interest rate" based on "investments comparable to the [n]otes" with respect to, *inter alia*, debt rating and maturity dates "similar to 2012," the same year the notes were scheduled to mature).

The *Ormesa* court's finding that a mitigation factor should be calculated based on alternative investments with the same credit rating and a similar remaining maturity as the lost

7

investment complies with the principle that a plaintiff cannot recover damages for "loss that the injured party could have avoided without *undue risk*, burden or humiliation." Restatement (Second) of Contracts, § 350(1) (1981) (the "Restatement") (emphasis added); *see also R.M. Railcars LLC v. Marcellus Energy Servs., LLC,* No. 1:14-cv-01167 (BKS/RFT), 2015 WL 4508451, at *2 (S.D.N.Y. July 24, 2015) (internal citation omitted).

In addition, calculating a Reinvestment Rate based on alternative investments most similar to the lost investment is supported by the Restatement's instruction that "[w]hether an available alternative transaction is a suitable substitute depends on all the circumstances, including the similarity of the performances *and the times* and places *that they would be rendered*." Restatement, § 350 cmt. e (emphasis added). Thus, the Reinvestment Rate should be based on bonds that are scheduled to mature close to the Maturity Date of the Notes.

The Restatement further states that "[i]f discrepancies between the transactions can be adequately compensated for in damages, the alternative transaction is regarded as a substitute and such damages are awarded." Restatement, § 350 cmt. e. In general, ███████████ ███████████████████████████████ *See* SUMF, ¶¶ 354, 357, 361-63. So, these "discrepancies between" an alternative investment and the lost investment can, and must, be quantified and included in damages. Calculating damages based on available investments that are most similar to the lost investment best complies with this principle.

Finally, determining the appropriate methodology to calculate Plaintiffs' damages must account for the wrongdoer rule, which provides that "when the existence of damage is certain, and the only uncertainty is as to its amount, . . . the burden of uncertainty as to the amount of damage is upon the wrongdoer." *Schonfeld v. Hilliard*, 218 F.3d 164, 174-75 (2d Cir. 2000)

8

(citing *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977)). Thus any uncertainty should be resolved against CoBank, the wrongdoer.

### B. A REINVESTMENT RATE SHOULD BE DERIVED FROM BONDS IN THE SAME RATING CATEGORY AS THE NOTES

A Reinvestment Rate should be determined by reference only to bonds that, as of April 2016, had the same credit rating as the Notes. Only those bonds possess "investment characteristics *as close as possible* to the original investment." *See Ormesa*, 791 F. Supp. at 416 (emphasis added); *see also Premier*, 445 B.R. at 642-43, n. 240 (determining "market interest rate" for mitigation based on "investments comparable to the [n]otes" with respect to debt rating). Moreover, there is no reasonable basis to conclude that the credit rating applicable to the Notes on the Redemption date provided an incorrect assessment of the Notes' credit risk.

Plaintiffs' proffered expert Lyon determined a Reinvestment Rate using only "A" rating category bonds, during the period of April 1 to April 15, 2016, consistent with *Ormesa*. SUMF, ¶ 336. ██████████████████████████████████████████████████, SUMF, ¶ 369, *see also* SUMF, ¶¶ 367-68, ██████████████████████████████████████ ██████████████████████████████. Ignoring *Ormesa*'s guidance, rather than selecting a security "as close as possible" to the Notes, *Ormesa*, 791 F. Supp. at 416, ██████ ██████████████████████████████████████████████████ SUMF, ¶¶ 376, 378, 380, 384-85, 391-92.

The criteria that underlie ratings demonstrate material differences between the ██████ ██████████████████████████████████████ For instance, S&P's "A" rating indicates that the "obligor's capacity to meet its financial commitments on the obligation is still strong." *Id*., ¶ 378. By contrast, S&P's "BBB" rating indicates that "adverse economic

9

conditions or changing circumstances are more likely to weaken the obligor's capacity to meet its financial commitments on the obligation." *Id.*, ¶ 380.



. *Id.*, ¶¶ 384-85, 391-92.[6] Because BBB-rated bonds have a ██████ than A-rated bonds, *see id.*, ¶ 373, they should not be used to determine a Reinvestment Rate.

██████ yield-to-worst ("YTW")[7] ██████ *Id.*, ¶ 394. ██████

██████ *id.*, ¶¶ 395-401, ██████

██████ *Id.*, ¶ 402. In light of this admission, CoBank cannot credibly propose that a Reinvestment Rate should be derived from a "BBB" rated security.

██████ introduces a material discrepancy between that sample set of alternative investments and the Notes, and such a discrepancy must be quantified and included in the calculation of damages. *See* Restatement, § 350 cmt. e ("If discrepancies between the transactions can be adequately compensated for in damages, the alternative transaction is regarded as a substitute and such damages are awarded."). Calculating a Reinvestment Rate based on bonds in the BBB rating

---

[6] ██████ SUMF, ¶ 372; *see also id.*, ¶ 371.

[7] ██████ *Id.*, ¶ 360.

10

category would effectively cause Plaintiffs to assume "undue risk," contrary to the Restatement. *See* Restatement, § 350(1).

Thus, since CoBank deprived Plaintiffs of the remaining maturity of their investment in a security rated in the "A" rating category, a Reinvestment Rate therefore should be derived, consistent with Plaintiffs' proffered expert's opinion, only from bonds in that same category.

### C. A REINVESTMENT RATE SHOULD BE DETERMINED BASED ON THE REMAINING DURATION OF THE NOTES

A Reinvestment Rate should be determined by reference only to bonds that match the remaining duration of the Notes, as such bonds are most similar to the "lost opportunity" of which Plaintiffs were deprived by the Redemption. The *Ormesa* court held that damages should be calculated with respect to alternative investments with "a maturity and average life similar to" the original, lost investment opportunity. 791 F. Supp. at 416. The court determined that calculating the alternative investment for a 20-year term best measured the damages the plaintiff suffered by losing its opportunity to extend a loan of that term. *Id.*

In this case, however, Plaintiffs' "lost opportunity" consisted of the remaining duration of the Notes—*i.e.*, the two years from the April 15, 2016 Redemption—rather than the original, ten-year duration. Therefore, only bonds with a maturity date close to April 16, 2018 are appropriately considered in determining a Reinvestment Rate. *See Ormesa*, 791 F. Supp. at 416; *Premier*, 445 B.R. at 642-43, n. 240 (determining "market interest rate" for mitigation based on "investments comparable to the [n]otes" with respect to maturity date); *Outdoor Sports*, 161 B.R. at 424.

Again, Lyon's opinion is based on a reinvestment sample set of bonds maturing in April 2018. SUMF, ¶ 336. ███████████████████████████████████████

███████████ *Id.*, ¶¶ 353-54, 356-57. Using bonds that mature after the Maturity Date would,

11

like using lower-rated bonds, reduce Plaintiffs' calculated damages by introducing a material discrepancy between those alternative investments and the Notes, which discrepancy must be quantified and separately included in the calculation of damages. *See* Restatement, § 350 cmt. e.

By redeeming the Notes, CoBank deprived Plaintiffs of their investment in a security maturing in April 2018. A Reinvestment Rate, therefore, should be derived only from bonds that were scheduled to mature in April 2018.

### D.   A REINVESTMENT RATE SHOULD BE DETERMINED BY AN OBJECTIVE STANDARD, RATHER THAN BY REFERENCE TO PLAINTIFFS' SUPPOSED INVESTMENT PRACTICES

A Reinvestment Rate should be determined by an objective standard based on "investment[s] with similar characteristics" to the Notes, not by reference to Plaintiffs' supposed investment practices. *Ormesa*, 791 F. Supp. at 416; *see also Premier*, 445 B.R. at 589, 642-43, n. 240 (endorsing calculation of damages by reference to "investments comparable to the [n]otes"); *Outdoor Sports*, 161 B.R. at 424 (measuring "actual damages" by reference to "the market rate of interest"). This is an objective standard that is not determined by the characteristics of the injured party, as those characteristics do not affect whether an alternative investment was similar to the lost investment in pertinent respects, such as maturity date and credit quality. Neither the investment practices of Plaintiffs, nor suppositions as to types of investments that certain types of institutions make, determine what is similar to the Notes.

Plaintiffs' expert, who determined a Reinvestment Rate based on the characteristics of bonds available for investment around the time of the Redemption, was faithful to this approach. SUMF, ¶¶ 331, 335-36, 346. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id*., ¶¶ 341-42, 353-54, 356-57. This methodology is improper because it is

12

not intended to identify alternative investments with "investment characteristics as close as possible to the original investment." *Ormesa*, 791 F. Supp. at 416

Moreover, ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ SUMF, ¶¶ 347, 349-51 (emphases added). ████████████████████████████████

████████████████████████." *Id.*, ¶ 352 ("█████████████████████

████████████████████████████████); *see also id.*, ¶ 347.

Plaintiffs' expert applies an appropriate methodology by calculating a Reinvestment Rate based on bonds similar to the Notes, whereas CoBank's expert artificially reduces Plaintiffs' calculated damages based on an inappropriate methodology and generalizations regarding the investment practices of *types* of investors, but not the Plaintiffs specifically.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment regarding the methodology for calculating Plaintiffs' damages should CoBank be found liable on Counts I and/or II of the Amended Complaint.

| | |
|---|---|
| Dated: New York, New York<br>March 13, 2018 | GRANT & EISENHOFER P.A.<br>By: *Gordon Z. Novod*<br>Jay W. Eisenhofer<br>Gordon Z. Novod<br>Caitlin M. Moyna<br>Jonathan D. Park<br>485 Lexington Avenue, 29th Floor<br>New York, New York 10017<br>(646) 722-8500<br><br>*Attorneys for Plaintiff* |

13