UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMCO INSURANCE COMPANY, *et al.*,

        Plaintiffs,

    v.

COBANK, ACB,

        Defendant.

No. 16-cv-4422-LTS-HBP

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES**

TABLE OF CONTENTS

                                                                                                                                                                  Page

TABLE OF AUTHORITIES ................................................................................................. ii  
PRELIMINARY STATEMENT ............................................................................................ 1  
STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................................... 2  
ARGUMENT .......................................................................................................................... 3  
    I.    THE FISCAL AGENCY AGREEMENT DID NOT PROHIBIT PLAINTIFFS FROM ACCELERATING THE NOTES. ...................................... 3  
    II.   THE REDEMPTION INJURED PLAINTIFFS IMMEDIATELY. ..................... 5  
    III.  COBANK'S POSITION CONFLICTS WITH ITS MITIGATION DEFENSE. ............................................................................................................. 8  
    IV.  NEW YORK LAW PERMITS DISCOUNTING BREACH-OF-CONTRACT DAMAGES TO THE DATE OF THE BREACH, THEN CALCULATING PREJUDGMENT INTEREST FROM THAT DATE. ...................................................................................................... 10  
CONCLUSION ..................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*155 Henry Owners Corp. v. Lovlyn Realty Co.*,
   647 N.Y.S.2d 30 (N.Y. App. Div. 2d Dep't 1992) ...................................................................8

*AboveNet Commc'ns, Inc. v. A&D Data Corp.*,
   No. 08 Civ. 6188 (RPP) (MHD), 2010 WL 235005 (S.D.N.Y. Jan. 19, 2010) .........................6

*Bell v. Mut. Benefits & Accident Ass'n of Omaha*,
   192 N.Y.S.2d 854 (N.Y. Sup. Ct. 1959) ....................................................................................7

*Brushton-Moira Cent. School Dist. v. Fred H. Thomas Assocs., P.C.*,
   91 N.Y.2d 256 (N.Y. 1998) ...................................................................................................8, 9

*In re Conn. Nat'l Bank*,
   928 F.2d 39 (2d Cir. 1991)........................................................................................................11

*F. Bender Inc. v. Crow Constr. Co.*,
   698 N.Y.S.2d 712 (N.Y. App. Div. 2d Dep't 1992) ..................................................................8

*Kaiser v. Fishman*,
   590 N.Y.S.2d 230 (N.Y. App. Div. 2d Dep't 1992) .............................................................8, 9

*McCready v. Lindenborn*,
   172 N.Y. 400 (N.Y. 1902) .....................................................................................................6, 7

*Romar v. Alli*,
   501 N.Y.S.2d 877 (N.Y. App. Div. 1st Dep't 1986) .................................................................7

*Teachers Ins. and Annuity Assoc. of Am. v. Ormesa Geothermal.*
   791 F. Supp. 401 (S.D.N.Y. 1991).................................................................................9, 10, 11

*Toledo v. Iglesia Ni Christo*,
   18 N.Y.3d 363 (N.Y. 2012) .....................................................................................................12

*Village of Ilion v. Cnty. of Herkimer*,
   23 N.Y.3d 812 (N.Y. 2014) ...............................................................................................10, 11

**Other Authorities**

Fed. R. Civ.P. 56....................................................................................................................................1

N.Y. C.P.L.R. § 5001.................................................................................................................1, 11, 12

Plaintiffs[1] respectfully submit this memorandum of law, pursuant to Federal Rule of Civil Procedure 56, in opposition to defendant CoBank, ACB's ("CoBank") motion for summary judgment regarding damages.

## PRELIMINARY STATEMENT

On April 15, 2016, CoBank redeemed its 7.875% Subordinated Notes due 2018 (the "Notes"), unilaterally taking the Notes from Plaintiffs—thus breaching the contractual terms governing the Notes—and paying Plaintiffs the principal amounts of their Notes in exchange. CoBank did so in order to avoid its contractual obligation to pay interest on the Notes at 7.875% per annum through their stated maturity date of April 16, 2018.

In the motion at hand, CoBank seeks a judgment that "Plaintiffs cannot assert a claim for prejudgment statutory interest prior to April 16, 2018." ECF 108 ("Def. Damage Br.") at 1, 7. Though conceding that Plaintiffs *were* damaged by its conduct, CoBank proposes that Plaintiffs did not suffer those damages until two years later. In attempting to limit its liability for prejudgment interest under N.Y. C.P.L.R. § 5001, CoBank misreads the Fiscal Agency Agreement[2] governing the Notes, mischaracterizes Plaintiffs' claims, contradicts its own affirmative defense, and attacks damages calculation methods accepted by New York courts. No

---

[1] Plaintiffs are AMCO Insurance Company, American Family Life Assurance Company of Columbus, Americo Financial Life and Annuity Insurance Company, Athene Annuity and Life Company, Bank of Utica Investment Subsidiary, Ltd., Beaumont Health, Bio-Rad Laboratories, Inc., Continental Casualty Company, Crestbrook Insurance Company, Dedham Institution for Savings, Ephrata National Bank, Erie Family Life Insurance Company, Federated Life Insurance Company, Great Southern Life Insurance Company, Health Care Service Corporation, Metropolitan Life Insurance Company, Mutual of America Life Insurance Company, Nationwide Life and Annuity Insurance Company, Nationwide Life Insurance Company, Nationwide Mutual Insurance Company, The Northwestern Mutual Life Insurance Company, Ohio National Life Assurance Corporation, The Ohio National Life Insurance Company, Scottsdale Insurance Company, Scottsdale Surplus Lines Insurance Company, Tauck, Inc., Thrivent Financial for Lutherans, Veterinary Pet Insurance Company, Victoria Fire & Casualty Company, and Waukesha State Bank.

[2] As used herein, "Fiscal Agency Agreement" or "FAA" refers to the Fiscal Agency Agreement between CoBank, ACB and The Bank of New York Trust Company, N.A, Fiscal Agent, Dated as of April 18, 2008. ECF 55 (Second Am. Compl.,), Ex. 1. "Fiscal Agent" refers to The Bank of New York Trust Company, N.A., in its capacity under the Fiscal Agency Agreement, and any successor in that capacity.

1

creative reasoning, however, can negate the fact that the Notes, on the date of the Redemption, were more valuable than the principal amounts thereof, and when CoBank took the former from Plaintiffs in exchange for the latter, Plaintiffs were injured. The relief sought by CoBank—a judgment barring Plaintiffs from statutorily-mandated prejudgment interest for the period from the Redemption (as defined below) until the Notes' stated maturity date of April 16, 2018—must be denied.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

On April 15, 2016, CoBank redeemed the Notes (the "Redemption"). Pursuant to a notice that CoBank issued a month prior, CSOF[3] ¶ 68, and, as required by the Fiscal Agency Agreement, *id.*, ¶ 66, "[i]n order to receive the Redemption Price, holders [were] required to surrender the certificate representing their Notes to the Fiscal Agent." *Id.*, ¶ 68. At that time, "[i]nterest on the Notes . . . cease[d] to accrue." *Id*; *see also id.*, ¶¶ 66, 69. It appears, moreover, that Notes surrendered to the Fiscal Agent in the Redemption were cancelled and destroyed by the Fiscal Agent. *Id.*, ¶ 71.

But for the Redemption, CoBank was contractually obligated to pay interest on the Notes semi-annually in arrears on each of April 15 and October 15 until payment of principal had been made. ECF 121 (Plaintiffs' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment) ("SUMF"), ¶ 82. Both CoBank and Plaintiffs have proffered expert witnesses on the subject of Plaintiffs' damages. *Id.*, ¶¶ 330, 339-40. Each, to account for Plaintiffs' duty to mitigate under controlling law, CSOF, ¶ 76, calculated damages by determining the income each Plaintiff would be deemed to have received by reinvesting an amount equaling the principal amount of Notes it held in a similar investment *on the date of the*

---

[3] As used herein, "CSOF" refers to Plaintiffs' Local Civil Rule 56.1 Response to CoBank's Statement of Material Facts and Counter-Statement of Undisputed Material Facts, filed contemporaneously herewith.

*Redemption*. SUMF, ¶¶ 331, 340, 353-58; *see also* CSOF, ¶ 79. Each then subtracted this hypothetical reinvestment income from the income stream Plaintiffs would have received from CoBank, but for the Redemption, through the April 16, 2018 maturity date of the Notes. SUMF, ¶¶ 331, 340. Thus, each expert calculated damages based on the assumption that each Plaintiff immediately reinvested a sum equal to the principal amount of Notes it held on the Redemption date.

## ARGUMENT

### I. THE FISCAL AGENCY AGREEMENT DID NOT PROHIBIT PLAINTIFFS FROM ACCELERATING THE NOTES

CoBank's motion relies on an erroneous interpretation of one provision of the Fiscal Agency Agreement, which CoBank asserts barred Plaintiffs from declaring the principal amount of the Notes immediately due and payable (that is, accelerating the Notes) in the event of a breach by CoBank. *See* Def. Damage Br. at 3. This rings hollow given that Plaintiffs' claims arise from the Redemption, through which *CoBank*, to Plaintiffs' dismay, effectively accelerated the Notes. After the Redemption, of course, acceleration was impossible. Moreover, CoBank's reading of the Fiscal Agency Agreement must be rejected because it conflicts with, and would render superfluous and nonsensical, another provision of that agreement. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992).

CoBank's motion relies on a provision stating that, unless an "Event of Default" (as defined by the Fiscal Agency Agreement) has occurred,

> [E]ach Holder of the [Notes] may pursue any available remedy to enforce the performance of any provision of this [Fiscal Agency] Agreement or the [Notes]; provided, however, that such remedy shall in no event include the right to declare principal on the [Notes] immediately due and payable.

Def. Damage Br. at 2; *see also* CSOF, ¶ 31.

3

This provision addresses the scope of remedies available to "Holder[s]," a defined term in the Fiscal Agency Agreement that refers to "registered" holders. CSOF, ¶ 72. Plaintiffs, however, were *beneficial* holders of the Notes, SUMF, ¶¶ 3-33, not registered "Holders." Plaintiffs assert claims arising from their rights as beneficial owners of Notes *as well as* authorizations to pursue claims from The Depository Trust Company, whose nominee, Cede & Co., was the sole *registered* Holder of a "global" Note representing all outstanding Notes. *Id.* ¶¶ 34-36; *see also* CSOF, ¶ 77 (CoBank asserted an affirmative defense that "Plaintiffs lack standing . . . insofar as Plaintiffs are merely beneficial, and not registered, holders").[4]

The above-quoted provision regarding the remedies available to "Holders," therefore, does not limit the remedies available to Plaintiffs and other beneficial owners of the Notes in the event of a breach by CoBank. The Fiscal Agency Agreement clearly states that "[n]o right or remedy herein conferred upon or reserved to the *Holders* is intended to be exclusive of *any other right or remedy*, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise." *Id.* ¶ 31 (emphasis added). The Fiscal Agency Agreement, which in its section 2(a)(ii) refers to actions initiated by an "owner of [Notes]"—which is *not* limited to "registered" owners—"to enforce *the owner's rights*," *see id.* ¶ 73 (emphasis added), "clearly anticipates that beneficial owners of [Notes]—not just Holders—have the right under the contract to enforce its provisions." *See AgriBank*, 2017 WL 4119649 at *3 (interpreting a similar fiscal agency agreement governing the debt securities of another Farm Credit System bank). Thus, "owners" of the Notes have rights, and corresponding remedies, not limited by the provision on which CoBank relies, which only addresses the remedies available to "Holders."

---

[4] CoBank has not revived this argument, which was resolved in a manner favorable to Plaintiffs *in Diverse Partners, LP v. AgriBank, FCB*, No. 16-cv-9526 (VEC), 2017 WL 4119649 (S.D.N.Y. Sept. 14, 2017).

4

CoBank's "interpretation, which relies on the remedies section's reference to Holders only, would render Section 2(a)(ii)[] of the [Fiscal Agency Agreement] nonsensical," *see id.*, violating the "well-settled" principle of New York law that contracts should not be interpreted in a manner that would render "at least one clause superfluous or meaningless." *See id.* (quoting *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992)). Because CoBank's motion rests on the erroneous proposition that the Fiscal Agency Agreement barred Plaintiffs from accelerating the Notes in the event of a breach by CoBank, it must be denied.

## II.     THE REDEMPTION INJURED PLAINTIFFS IMMEDIATELY

CoBank claims that Plaintiffs were not injured immediately upon the Redemption. *See* Def. Damage Br. at 5. This reasoning is grounded in a mischaracterization of Plaintiffs' claims, which are not simply that CoBank failed to make scheduled interest payments subsequent to the Redemption until the Notes' maturity date. Rather, Plaintiffs claim that CoBank impermissibly redeemed the Notes on April 15, 2016,[5] unilaterally removing the Notes from the ownership of Plaintiffs, causing the apparent cancellation of the Notes, halting the further accrual of interest on the Notes, and *disabling itself* from making further payments on the Notes. In these circumstances, Plaintiffs were damaged immediately by the Redemption.

On the date of the Redemption, when CoBank breached the terms governing the Notes, CoBank required that all outstanding Notes be surrendered to the Fiscal Agent. Thus, Plaintiffs' Notes (which were held in global form by Cede & Co., SUMF, ¶ 34; *see also* CSOF, ¶ 73) were *taken from them* on that date. CoBank observes that each Plaintiff received cash equaling the principal amount of Notes it held on April 15, 2016, but this amount was *less valuable* than the Notes themselves, which included the entitlement to interest accruing at 7.875% per annum until

---

[5] This violated the explicit terms of the Notes as well as the implied covenant of good faith and fair dealing, as shown in Plaintiffs' memorandum of law in support of their motion for summary judgment as to liability. ECF 119; *see also* ECF 101.

the Notes' maturity date in 2018. This is supported by the fact that the Notes traded *above* par (*i.e.*, for more than their principal amounts) prior to CoBank's announcement that it would redeem the Notes, SUMF, ¶ 399, as well as by indicative pricing for the Notes at that time. CSOF, ¶ 78.

Moreover, CoBank's argument is based exclusively on inapposite case law. Though Plaintiffs measure their damages by assessing interest payments on the Notes that would have been paid at intervals from April 2016 to April 2018, their claims do not arise from CoBank's mere failure to make timely those scheduled payments. CoBank primary relies on *AboveNet Communications, Inc. v. A&D Data Corp.*, No. 08 Civ. 6188 (RPP) (MHD), 2010 WL 235005 (S.D.N.Y. Jan. 19, 2010), which involved a party's failure to make payments required under an installment contract. *See* Def. Damage Br. at 6. Where a party to a contract fails to make a scheduled payment timely, it is possible that the offending party might remit the missed payment late and make future payments on time. "[T]he breach of an agreement to pay money in installments is not a breach of the entire contract." *See McCready v. Lindenborn*, 172 N.Y. 400, 408 (N.Y. 1902). For that reason, New York law may bar a claim for "anticipatory breach" with respect to payments not yet due. *See AboveNet Commc'ns*, 2010 WL 235005, at *5.

CoBank's redemption of the Notes, however, was not akin to a simple failure to make a scheduled installment payment. Plaintiffs' claims arise from CoBank's breach of the Notes' terms setting forth the limited circumstances in which CoBank could redeem the Notes.[6] CSOF, ¶ 75. The Redemption terminated the *entirety* of the contractual relationship between CoBank and Plaintiffs, leaving only claims and causes of action arising from CoBank's breach of contract. Plaintiffs' entitlement to interest payments from CoBank arose from their ownership of

---

[6] Plaintiffs' claims are also based upon CoBank's breach of the implied covenant of good faith and fair dealing. ECF 55 (Second Am. Compl.) at 36-37 (Count Two); *see also* ECF 119 and 101.

6

Notes; unlike many contractual relationships, CoBank had the ability—though it employed that ability impermissibly—unilaterally to remove the Notes from Plaintiffs' ownership and to have them cancelled. Moreover, the Fiscal Agency Agreement did not provide a mechanism for CoBank or the Fiscal Agent to make payments to holders of Notes that were already redeemed. CSOF, ¶ 74. Indeed, because the Notes were surrendered in the Redemption, there were technically no holders (beneficial or record) of Notes after that date.

This was a "breach of the entire contract," *cf. McCready*, 172 N.Y. at 408, because CoBank's breach deprived Plaintiffs of "the essence of the contract itself," without leaving it in force. *See Bell v. Mut. Benefits & Accident Ass'n of Omaha*, 192 N.Y.S.2d 854, 856 (N.Y. Sup. Ct. 1959). CoBank did not simply give Plaintiffs' reason to doubt that it would make future interest payments timely. By conducting the Redemption, CoBank clearly repudiated any further obligations with respect to the Notes and rendered it *incapable* of making future payments on the Notes. In these "special circumstances," the principle on which CoBank relies does not govern. *See Romar v. Alli*, 501 N.Y.S.2d 877, 878 (N.Y. App. Div. 1st Dep't 1986).

As a result of being deprived of their ownership interests in Notes, Plaintiffs could no longer use their Notes as they saw fit: they could not sell, pledge or hypothecate, or otherwise use or account for their Notes in the context of their investment portfolios and strategies. Any cash received by a Plaintiff as a result of the Redemption would not permit the same use given that the Notes were more valuable than just the principal.

Additionally, CoBank's purported expert observed that "[i]nsurers and banks typically manage their investment portfolios to fund their *expected* liabilities according to when those liabilities are *expected* to come due," SUMF, ¶ 347 (emphasis added), and that life insurance companies, in particular, invest "with the goal of generating *predictable* and stable income."

7

SUMF, ¶ 348 (emphasis added). The predictability and stability of investment income to insurers and banks, which permits them to match investment income to the amount and timing of their expected liabilities, is thus itself important and valuable to such institutions. This supports the conclusion that the *unexpected* and impermissible Redemption negatively affected Plaintiffs on the date it was consummated. After all, Plaintiffs made the affirmative decision to buy CoBank's A-rated Notes, maturing on April 16, 2018. Instead, Plaintiffs were forced to look for a replacement investment as of April 15, 2016, into which to reinvest the principal amount received from CoBank.

### III.  COBANK'S POSITION CONFLICTS WITH ITS MITIGATION DEFENSE

CoBank seeks relief that contravenes its affirmative defense that Plaintiffs failed to take reasonable steps to mitigate their damages. CoBank's own proffered expert's damages calculations reflect investments Plaintiffs were deemed to have made in mitigation. Remarkably, the case law on which CoBank relies does not discuss mitigation *at all*.

Under New York law, "sums expended in the mitigation of damages" are accounted for in determining an injured party's damages, and prejudgment interest should be applied from the dates such expenditures were made. *See Kaiser v. Fishman*, 590 N.Y.S.2d 230, 234 (N.Y. App. Div. 2d Dep't 1992); *see also Brushton-Moira Cent. School Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 263 (N.Y. 1998) ("[P]laintiff's damages in the instant case should be based on the cost to repair or replace the defective panels as of [the date the breach-of-contract cause of action accrued] and, pursuant to statutory mandate, prejudgment interest must also be calculated from that same date."); *F. Bender Inc. v. Crow Constr. Co.*, 698 N.Y.S.2d 712, 714 (N.Y. App. Div. 2d Dep't 1992) (calculating prejudgment interest based on the dates on which the plaintiff expended monies to mitigate its damages); *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 647 N.Y.S.2d 30, 31-32 (N.Y. App. Div. 2d Dep't 1992) (same).

8

CoBank claims that Plaintiffs were under a "duty to mitigate, so mitigation would need to be factored into any damages calculation." Def. Damage Br. at 5 n.6. To that end, CoBank has put forth a purported expert witness to calculate the amounts Plaintiffs would be deemed to have earned by reinvesting monies equaling the principal amounts of Notes they held as of the Redemption, that is, on April 15, 2016. SUMF, ¶¶ 339-40. In that purported expert's methodology, each Plaintiff was deemed to have immediately reinvested on April 15, 2016 an amount of cash equaling the principal amount of Notes it held on that date. SUMF, ¶¶ 353-58; *see also* CSOF, ¶ 79. So, a hypothetical plaintiff that held $1 million principal amount of Notes as of the Redemption would be deemed to have immediately, on April 15, 2016, reinvested that amount in another investment to replace that plaintiff's investment in the Notes. That $1 million, therefore, constitutes a "sum[] expended in the mitigation of damages," *see Kaiser*, 590 N.Y.S.2d at 234, or the cost to "replace" the plaintiff's investment in the Notes, *see Brushton-Moira*, 91 N.Y.2d at 263, and thus must constitute part of Plaintiffs' damages as of the date of the Redemption, when—according to CoBank's purported expert—the reinvestments must be deemed to have been made.[7]

The law does not bar Plaintiffs from prejudgment interest as of the date of CoBank's breach, while also obligating Plaintiffs to make new investments (for the duration of which Plaintiffs would not have use of the invested monies) as mitigation that would *reduce* their damages. The case law on which CoBank relies does not discuss mitigation, but the concepts of mitigation and prejudgment interest under New York law were both addressed in *Teachers Insurance and Annuity Association of America v. Ormesa Geothermal*. 791 F. Supp. 401 (S.D.N.Y. 1991). There, as here, the defendant did not simply fail to make installment payments

---

[7]   Of course, the return earned on that hypothetical $1 million investment from April 15, 2016 to April 16, 2018 could be—and is, in the calculations made by each side's proffered expert—deducted from the losses suffered by Plaintiffs, though the return should be first discounted to its value as of the date of CoBank's breach.

9

as scheduled. In *Ormesa*, the defendant, seeking to take advantage of a decline in interest rates, was found liable for breaching its contractual agreement to take a loan from the plaintiff. *Id.* at 405, 406, 415. Thus, the loan at issue was never funded, so the plaintiff *retained*—rather than lending to defendant—the principal amount of the loan at issue, akin to CoBank's observation that Plaintiffs received the principal amount of their Notes holdings when the Redemption occurred. The *Ormesa* court computed damages using "the interest income that would have been earned by [the plaintiff] on the [loan at issue] had there been no breach" and "the interest income [the plaintiff] would have earned from mitigating its damages by making another investment with similar characteristics." *Id.* at 416. The court discounted both of these amounts to their present value at the date the plaintiff's cause of action accrued, *id.* at 418,[8] and then calculated prejudgment interest accruing from that date (i.e., from the date of the breach). This methodology properly accounts for *both* mitigation and statutorily-mandated prejudgment interest, and should be applied by the Court in this case.[9] The relief sought by CoBank contravenes this methodology and should be denied.

### IV. NEW YORK LAW PERMITS DISCOUNTING BREACH-OF-CONTRACT DAMAGES TO THE DATE OF THE BREACH, THEN CALCULATING PREJUDGMENT INTEREST FROM THAT DATE

CoBank's motion must be denied because New York law permits the discounting of future damages back to the date of breach before calculating statutory prejudgment interest. *See, e.g.*, *Village of Ilion v. Cnty. of Herkimer*, 23 N.Y.3d 812, 818 (N.Y. 2014) ("Generally, discounting future damages to their value at some point in the past is appropriate because it takes

---

[8] To determine those present values, the *Ormesa* court used the same discount rate as the rate it adopted for the alternative investment the plaintiff was deemed to have made in mitigation. Plaintiffs' proffered expert did the same, CSOF, ¶ 80, and CoBank's proffered expert neither attempted to rebut this calculation nor offered an opinion of his own regarding present-valuing. *Id.* ¶¶ 81-82.

[9] As discussed more fully in Plaintiffs' memorandum of law in support of their motion for summary judgment as to damages methodology. ECF 129; *see also* ECF 102.

into account the time value of money."); *see also In re Conn. Nat'l Bank*, 928 F.2d 39, 44 n.5 (2d Cir. 1991) ("The general proposition that prejudgment interest is not allowable on future losses . . . is inapplicable to the sum of the 'present' value of future payments that have been discounted back to the date of loss.").[10] In *Village of Ilion*, a breach-of-contract case, the Court of Appeals found that the plaintiff's damages should be discounted to the date the cause of action accrued, and that prejudgment interest[11] should be calculated as running from that date. 23 N.Y.3d at 820, 822.

The court reached the same result in *Ormesa*, where, as noted above, the plaintiff retained the principal amount of the loan at issue because the defendant breached its agreement to take the loan. The *Ormesa* court rejected the defendant's argument that, because the plaintiff had received its profit for the loan in installment payments over a period of years, the court could not award prejudgment interest commencing as of the date of the breach. *Id.* at 417-18. The court ruled that it was proper to "award[] damages in the form of a one[-]time payment equivalent to the stream of income [the plaintiff] would have received from the loan," *id.* at 418, and that because that "one[-]time payment" was discounted to its present value at the date of breach, "[n]ot allowing that discounted award to draw interest . . . would deprive [the plaintiff] of that growth and would thus destroy the premise underlying the concept of present value discount," and fail to compensate the plaintiff fully. *Id.*

To the extent CoBank is, *sub silentio*, attacking any difference between the appropriate discount rate (which has not yet been determined) and the statutory interest rate, its grievance is

---

[10] Though *In re Connecticut National Bank* "was an admiralty case, and thus involved the application of federal, rather than New York, law[,] . . . it contains a cogent discussion of the economic concepts involved in present value analysis, the relevance of which is not limited to federal law." *Ormesa*, 791 F. Supp. at 418 n.9.

[11] Though the Court of Appeals used the term "preverdict interest" in *Village of Ilion*, it discussed the same statutory provision—N.Y. C.P.L.R. § 5001—raised in CoBank's motion.

11

not a matter for this Court. *See Toledo v. Iglesia Ni Christo*, 18 N.Y.3d 363, 368 n.2 (N.Y. 2012) ("That the difference between the discount rate and the statutory interest rate provides a benefit to plaintiff is an issue for the legislature and not one for judicial determination.") (citing *Desiderio v. Ochs*, 100 N.Y.2d 159, 176 (N.Y. 2003) (Rosenblatt, J., concurring)).

Finally, because this Court has not yet determined the appropriate discount rate, nor the sum (or sums) on which, and date (or dates) from which, it should be calculated—questions that are not squarely presented for resolution—CoBank's request is, at a minimum, premature. CoBank seeks judgment regarding prejudgment interest that, under New York law, "shall be recovered upon a sum awarded because of a breach of judgment," N.Y. C.P.L.R. § 5001(a). However, no sum has been yet awarded to Plaintiffs and the methodology for calculating that award—including but not limited to any accounting for mitigation and/or present-value discounting—has not been determined. Therefore, CoBank's motion must be denied.

## CONCLUSION

For all of the foregoing reasons, the Court should deny CoBank's motion for summary judgment regarding Plaintiffs' entitlement to prejudgment interest under N.Y. C.P.L.R. § 5001.

| | |
|---|---|
| Dated: New York, New York<br>April 30, 2018 | GRANT & EISENHOFER P.A.<br><br>By:  /s/ *Gordon Z. Novod*<br>       Jay W. Eisenhofer<br>       Gordon Z. Novod<br>       Caitlin M. Moyna<br>       Jonathan D. Park<br>485 Lexington Avenue, 29th Floor<br>New York, New York 10017<br>(646) 722-8500<br><br>*Attorneys for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

I, Gordon Z. Novod, hereby certify that on April 30, 2018, I caused a copy of the foregoing to be served via CM/ECF on the following counsel:

>Shawn Patrick Regan
>Patrick L. Robson
>Joseph J. Saltarelli
>Jennifer L. Bloom
>Peter M. Mustalish
>HUNTON & WILLIAMS LLP
>200 Park Avenue
>New York, NY 10166
>sregan@hunton.com
>probson@hunton.com
>jsaltarelli@hunton.com
>jbloom@hunton.com
>pmustalish@hunton.com

>*/s/ Gordon Z. Novod*
>Gordon Z. Novod