UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMCO INSURANCE COMPANY, *et al.*,

                Plaintiffs,

    - against -                      No. 16-cv-4422 (LTS)(HBP)

COBANK, ACB,

                Defendant.
------------------------------------------------------------X

### COBANK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DAMAGES METHODOLOGY

Shawn Patrick Regan
Joseph J. Saltarelli
Peter Mustalish
Jennifer Bloom
Silvia N. Ostrower
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

*Attorneys for Defendant
CoBank, ACB*

# **TABLE OF CONTENTS**

                                                                        **Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT..............................................................................................................................3

I.     Plaintiffs' Motion for Summary Judgment As To Damages Methodology
       Should Be Denied. ...........................................................................................................3

       A.     The Data Set of Alternative Investments Need Not Be Derived Solely
               From Bonds in the Same Rating Category as the 2008 Notes................................5

       B.     The Data Set of Alternative Investments Need Not Be Restricted to Bonds
               with Two-Year Maturities, and Dr. Finnerty's Reliance on Plaintiffs'
               Actual Investments was Reasonable and Appropriate.............................................7

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Gen. Corp. v. Cont'l Airlines Corp.*,
  622 A.2d 1 (Del. Ch.), *aff'd*, 620 A.2d 856 (Del. 1992) ............................................................8

*McGrath v. McGrath*,
  2007 WL 738697 (Mass. Super. Feb. 12, 2007) ..........................................................................9

*Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*,
  269 F. Supp. 2d 206 (S.D.N.Y. 2003) ..........................................................................................9

*In re Premier Entertainment Biloxi LLC*,
  445 B.R. 582 (Bankr. S.D. Miss. 2010) .......................................................................................7

*Prusky v. ReliaStar Life Ins. Co.*,
  532 F.3d 252 (3d Cir. 2008) ......................................................................................................4, 8

*Teachers Ins. and Annuity Ass'n of Am. v. Ormesa Geothermal*,
  791 F. Supp. 401 (S.D.N.Y. 1991) ........................................................................................*passim*

**Other Authorities**

Miles Livingston, Andy Naranjo & Lei Zhou, *Split Bond Ratings and Rating Migration*, 32 JOURNAL OF BANKING & FINANCE 1613-1624 (2008) ..........................................6

Defendant CoBank, ACB ("CoBank"), respectfully submits this Memorandum of Law in opposition to Plaintiffs' Motion for Summary Judgment as to Damages Methodology. For the reasons that follow, the motion should be denied.

## PRELIMINARY STATEMENT

Although the parties' respective experts have applied the same standard to calculate the alleged lost interest damages in this case, as set forth in *Teachers Ins. and Annuity Ass'n of Am. v. Ormesa Geothermal*, 791 F. Supp. 401 (S.D.N.Y. 1991) ("*Ormesa*"), Plaintiffs now move for summary judgment seeking a legal determination that CoBank's expert, Dr. John D. Finnerty, applied an incorrect "methodology" in rendering his opinion regarding mitigation of Plaintiffs' alleged damages. Specifically, Plaintiffs challenge CoBank's expert's approach to compiling a data set of alternative investments similar to the 2008 Notes at the time of their redemption in 2016. Consistent with *Ormesa*, each expert compiled such a data set for the purpose of deriving the appropriate interest rate – the "reinvestment rate" – to apply to proceeds of the redemption, in order to determine what would have been reasonable mitigation of the alleged damages.

Because the issue of what constitutes reasonable mitigation is a genuine factual dispute, Plaintiffs' motion for summary judgment as to "damages methodology" should be denied. In the unlikely event Plaintiffs' claims survive CoBank's motion for summary judgment as to liability, the dispute between the parties' experts regarding mitigation should be for the trier of fact to resolve, after considering the data analyzed and reasoning employed by each of them.

Plaintiffs have no basis to seek disqualification of Dr. Finnerty, a tenured professor of finance and nationally recognized expert in the field of fixed-income securities, with a long list of published works on fixed-income securities trading and analysis. Faced with that obstacle, they have instead filed a motion for summary judgment regarding the "damages methodology" allegedly applied by Dr. Finnerty. The motion essentially asks the Court to preclude, as a matter

of law, Dr. Finnerty's opinion on the appropriate "reinvestment rate" that should be imputed as part of the mitigation analysis, based on the data set of alternative investments he compiled to derive the rate.

Like Plaintiffs' expert, Dr. Finnerty arrived at his conclusions regarding the reinvestment rate by analyzing – consistent with *Ormesa* – alternative investments with characteristics similar to the 2008 Notes available to Plaintiffs when CoBank redeemed the 2008 Notes in April 2016. Plaintiffs object to Dr. Finnerty's data set of alternative investments on two grounds:

- Credit rating – Plaintiffs assert that *Ormesa* required Dr. Finnerty to include in his data set only bonds with the exact same credit rating as the 2008 Notes; and

- Maturity – Plaintiffs assert that *Ormesa* required Dr. Finnerty to consider only bonds with a two-year maturity, to match the remaining life to maturity of the 2008 Notes as of April 2016 when they were redeemed.

Plaintiffs also assert that under *Ormesa*, Dr. Finnerty was limited to reviewing what Plaintiffs characterize as "objective" market data when compiling his data set of alternative investments, and thus was prohibited from considering the actual investments Plaintiffs made at the time of the redemption.

None of Plaintiffs' arguments has any merit. For the reasons below, Plaintiffs' reading of the *Ormesa* decision is unduly restrictive and in important respects belied by the decision itself. Nothing in *Ormesa* precludes Dr. Finnerty's approach to alternative bond investments, and there is no basis to bar his approach as a matter of law.

The two experts' conclusions regarding the appropriate reinvestment rate for mitigation purposes do not differ markedly: Plaintiffs' expert, G. Grant Lyon, opined that the reinvestment

rate is 1.695%[1], while Dr. Finnerty opined that the rate is either 2.57% or 3.385% depending on the particular Plaintiff's line of business and investment practices. Not surprisingly, however, there exists between them a difference of opinion regarding which investments are properly included in the data set of alternative investments from which the reinvestment rate is derived. For the reasons that follow, Plaintiffs' motion to preclude Dr. Finnerty's opinion regarding the reinvestment rate should be denied.

## ARGUMENT

### I. Plaintiffs' Motion for Summary Judgment As To Damages Methodology Should Be Denied.

Assuming that the Court even reaches the issue of damages (which it should not for the reasons set forth in CoBank's motion for summary judgment as to liability), Plaintiffs' motion for summary judgment regarding damages methodology should be denied. The appropriate reinvestment rate to apply to the redemption proceeds is a disputed issue of fact that should be reserved for trial.

Plaintiffs mischaracterize the respective experts' different approaches to the same question – which investments should be included in the data set used to derive the reinvestment rate – as an indication that they have employed different "damages methodologies." But the parties do not dispute the applicability of the *Ormesa* standard and, consistent with that standard,

---

[1] This is the conclusion in Mr. Lyon's Third Corrected Report (the latest one to date). In his original report, Mr. Lyon arrived at a lower rate (1.625%) but later realized he had made certain errors and submitted a Corrected Report with the same conclusion. Subsequently, after realizing he had made several additional errors, Mr. Lyon submitted a Second Corrected Report, concluding that the rate was 1.622%. Finally, Mr. Lyon realized he had made yet another mistake and submitted his Third Corrected Report, which concluded that the rate was 1.695%.

3

Dr. Finnerty created a data set of alternative investments with characteristics similar to the 2008 Notes for purposes of rendering an opinion on reasonable mitigation.[2]

Plaintiffs argue, based on *Ormesa*, that in creating his data set of alternative investments with characteristics similar to the 2008 Notes, Dr. Finnerty (i) should have included only bonds with the exact same credit rating and remaining duration (*i.e.*, two years) as the 2008 Notes at the time of the redemption,[3] and (ii) should not have considered as part of his analysis Plaintiffs' actual investments at the time of the redemption. Neither of these challenges to Dr. Finnerty's approach survives scrutiny under *Ormesa*. To the contrary, review of *Ormesa* and related precedent reveals that Dr. Finnerty's approach to compilation of the data set of alternative investments is the more reasonable one.

In *Ormesa*, the court held that where a party is entitled to lost interest income, "the lost interest income is measured as the difference between (a) the interest income [plaintiff] would have earned had the contract been performed, and (b) the interest income [plaintiff] would be deemed to have earned by timely mitigating its damages – *i.e.*, *by making an investment with similar characteristics at the time of the breach*." 791 F. Supp. at 416 (emphasis added).[4]

The second component of this test is at issue here. The "calculation" of that component "requires identification of the 'alternate investment' [a plaintiff] would be deemed to have made in mitigation. The 'alternate investment' should have investment characteristics as close as

---

[2] Of course, the very issue of the "reasonableness" of a non-breaching party's efforts to mitigate damages is "to be determined from all the facts and circumstances of each case." *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 259 (3d Cir. 2008) (citation and internal quotation marks omitted).

[3] The 2008 Notes were issued in April 2008 with an original maturity date in April 2018 (10 years). Thus, at the time of the redemption in April 2016, there were two years remaining until maturity.

[4] Unlike this case, *Ormesa* dealt with a private loan agreement that was never funded – not a fixed income security like the 2008 Notes.

4

possible to the original investment," with respect to principal amount, interest rate, credit quality, and term among other considerations. *Id.*

Entirely consistent with this standard, Dr. Finnerty analyzed and rendered an opinion as to "the interest income the Plaintiffs should be deemed to have earned by timely mitigating any lost interest income by making an investment with similar characteristics to the 2008 Notes at the time of the Redemption." (Finnerty Rept. ¶ 10.) Plaintiffs argue *Ormesa* mandates that alternative investments with "*similar characteristics*" to the 2008 Notes possess the *exact same characteristics* as the 2008 Notes. Of course, for one thing to be "similar" to another does not mean the two are the "same." Nothing in *Ormesa* dictates the absurd result Plaintiffs suggest.

### A. The Data Set of Alternative Investments Need Not Be Derived Solely From Bonds in the Same Rating Category as the 2008 Notes.

Plaintiffs are correct that the 2008 Notes had a credit rating of A during the entire period they were outstanding. In compiling his data set of alternative investments, Dr. Finnerty included bonds rated BBB, one rung below A. Like the 2008 Notes, BBB-rated bonds are also "investment grade" securities, and many if not most Plaintiffs regularly invest in BBB-rated securities for their portfolios. Dr. Finnerty explains in his report why he decided to include BBB-rated bonds in his data set. (Finnerty Rept. ¶¶ 32-44; Finnerty Rebuttal Rept. ¶¶ 11-14.)

Plaintiffs argue that under *Ormesa* the appropriate data set of alternative bonds should be limited to A-rated bonds. But nothing in *Ormesa* supports Plaintiffs' rigid view of what can be considered alternative investments "similar" to the 2008 Notes. And there likewise is no support for their argument that including in the data set investment grade bonds rated BBB, one rung below A, is barred as a matter of law. *Ormesa* merely calls for examination of alternative investments with, among other attributes, the "***approximate*** creditworthiness" of the original

5

investment. *Ormesa*, 791 F. Supp. at 416 (emphasis added).[5] Thus, with respect to investment credit ratings, *Ormesa **supports*** Dr. Finnerty's inclusion of BBB-rated bonds in the data set of alternative bond investments.

In his rebuttal expert report, Dr. Finnerty provided several reasons why inclusion of BBB-rated bonds in his data set was appropriate.[6] (Finnerty Rebuttal Rept. ¶¶ 11-14.) Among other things, Dr. Finnerty explained that Mr. Lyon's data set was "unduly restricted" to A-rated corporate bonds because the "yield-to-worst" of the 2008 Notes at the time the redemption was announced approximated the yield for an index of corporate bonds in the BBB-rated category. Thus, the exclusion of BBB-rated bonds from a sample set of alternative investments to the 2008 Notes was analytically unsound, and renders Mr. Lyon's data set an inaccurate representation of

---

[5] "Aa" is a Moody's rating category. It is well known that different rating agencies often assign different ratings to the same security. Indeed, the academic literature on the subject reveals that approximately half of all U.S. corporate and municipal bonds have "notch-level" rating splits (*e.g.*, B versus B-) while approximately 20% have a "letter" or category rating split (*e.g.*, BB versus B). *See* Miles Livingston, Andy Naranjo & Lei Zhou, *Split Bond Ratings and Rating Migration*, 32 JOURNAL OF BANKING & FINANCE 1613-1624, at 1613 (2008).

[6] Taking a snippet of deposition testimony out of context, Plaintiffs argue that because Dr. Finnerty "admitted" that "a lower YTW for the Notes did *not* indicate that the Notes were less risky," CoBank "cannot credibly propose that a Reinvestment Rate should be derived from a 'BBB' rated security." (Pls.' Damages Br. at 10 (emphasis in original).) The assertion is both incorrect and misleading. First, the cited testimony by Dr. Finnerty did not constitute an "admission" about anything. It was simply part of a lengthy colloquy explaining the use of indicative versus actual pricing data to calculate YTW, and the inverse relationship between a bond's yield and its price. (Finnerty Dep. 95:18 to 97:20.) More significantly, Plaintiffs' contention that Dr. Finnerty's testimony undermines CoBank's position "that a Reinvestment Rate should be derived from a 'BBB' rated security" completely misstates Dr. Finnerty's analysis and conclusion. For the reasons set forth in his reports, explained in his deposition testimony, and described in the text above, Dr. Finnerty has opined that the reinvestment rate is most reasonably derived from a data set that includes *both* A-rated bonds *and* BBB-rated bonds, one rating category below A. Dr. Finnerty has never proposed deriving the reinvestment rate from a data set consisting *only* of BBB-rated bonds.

alternative investments available to Plaintiffs in April 2016. (*Id.* at ¶ 12.) Nothing in *Ormesa* precludes Dr. Finnerty's more inclusive and realistic approach as a matter of law.[7]

        B.      The Data Set of Alternative Investments Need Not Be Restricted to Bonds with Two-Year Maturities, and Dr. Finnerty's Reliance on Plaintiffs' Actual Investments was Reasonable and Appropriate.

Plaintiffs next argue that Dr. Finnerty's data set should have been further limited to bonds with the same remaining duration of the 2008 Notes, *i.e.*, two years, rather than bonds with five to twelve year maturities, in which Plaintiffs were actually investing at the time. Here also, Plaintiffs' reliance on *Ormesa* is unavailing. *Ormesa* involved a private term loan that was breached before it was ever funded, so the remaining and original duration of the loan were the same. The *Ormesa* court thus never addressed the specific disagreement that exists between the experts here regarding the duration of bonds to be included in a data set of alternative investments.

Dr. Finnerty decided to include in his data set bonds with five to seven year maturities (for the banking industry Plaintiffs) and ten to twelve year maturities (for the insurer Plaintiffs) because these were the maturities of the actual investments Plaintiffs were making at the time they received the redemption proceeds. Dr. Finnerty's review of the trading data produced by Plaintiffs during discovery revealed that Plaintiffs ████████████████████████████████ ████████████████████████. (Finnerty Rebuttal Report at ¶¶ 15-22; Finnerty Report at ¶¶ 28-31.)

---

[7] In an effort to bolster their argument, Plaintiffs cite *In re Premier Entertainment Biloxi LLC*, 445 B.R. 582 (Bankr. S.D. Miss. 2010). (Pls.' Damages Br. at 9 ("*see also Premier*, 445 B.R. at 642-43, n. 240").) The cited footnote reveals that the expert in *Premier* "identified comparable investments . . . *with a debt rating of single B to triple Cs*," *Premier*, 445 B.R. at 642-43 n. 240 (emphasis added). Based on publicly available market data, that range identifies two of the three ratings assigned over the life of the security at issue in *Premier*, the omitted rating being the D rating assigned at the time of default. Thus, the *Premier* court endorsed an expert opinion that used alternative investments **straddling two adjacent ratings categories** when evaluating "comparable" investments for mitigation purposes, an approach consistent with the one taken by Dr. Finnerty. In sum, nothing in *Premier* supports Plaintiffs' argument that Dr. Finnerty's approach should be precluded as a matter of law.

7

Moreover, many Plaintiffs' representatives testified that ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████, ████████████████.

In contrast, Plaintiffs' expert ignored this compelling evidence of actual investments, and instead artificially limited his data set of alternative bonds to lower-yield, two-year bonds (█ ███████████████████████) to arrive at a lower reinvestment rate (and concomitantly higher amount of alleged lost interest damages). While Mr. Lyon is free to attempt to justify such a restricted data set of alternative investments bearing no resemblance to the investments Plaintiffs actually were making at the time of the redemption (or, for that matter, to the original maturity of the 2008 Notes), there is no basis to preclude Dr. Finnerty's different and more realistic approach as a matter of law.

Indeed, *Ormesa* suggests that the particular characteristics, history and experience of a plaintiff-investor are reasonable factors to consider when analyzing mitigation: "although it may not be appropriate to force unsophisticated individuals to assume risks in investing monetary rewards, those same concerns do not apply to sophisticated investors such as [plaintiffs]." 791 F. Supp. at 417. And courts routinely look to a plaintiff's actual behavior when assessing the reasonableness of his mitigation efforts. *See Prusky*, 532 F.3d at 262 ("Certainly, investing in mutual funds entails a degree of risk, and it would likely be improper to force such investments upon laypersons if their prior investments were exclusively in low- to no-risk vehicles like certificates of deposits or treasuries. But that was not the case with the [plaintiffs]. [Plaintiffs]

---

[8] At least one court has held that a plaintiff insurance company cannot be expected to have made a certain mitigating investment because such an investment might violated state insurance laws. *Am. Gen. Corp. v. Cont'l Airlines Corp.*, 622 A.2d 1, 11 (Del. Ch.), *aff'd*, 620 A.2d 856 (Del. 1992). Thus, courts clearly look at a plaintiff's actual circumstances and practices in evaluating the reasonableness of its mitigation efforts.

had a long track record – indeed, over three decades worth, combined – as successful money managers."); *McGrath v. McGrath*, 2007 WL 738697, at *9 (Mass. Super. Feb. 12, 2007) (holding that defendants were not precluded from presenting to the jury evidence of the counterclaimants' investment history in support of their mitigation defense: "The fact finders' determination of the reasonableness of the Counterclaimants' efforts, or lack thereof, to minimize [*i.e.*, mitigate] their losses must include a consideration, in part, of whether the alternative investments are reasonable in light of the Counterclaimants' regular investment practices which, in turn, will necessitate a consideration of the Counterclaimants' past investment.").

In sum, when compiling his data set of alternative investments, it was appropriate for Dr. Finnerty to consider the investment policies of and actual investments made by Plaintiffs when the 2008 Notes were redeemed. It should be for the factfinder to determine whether Dr. Finnerty's evidence-based approach to compilation of the data set and the reinvestment rate derived from it, or Mr. Lyon's patently result-driven approach, is the more reasonable. *See Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206, 222 (S.D.N.Y. 2003) (denying summary judgment and holding that questions surrounding what plaintiff did or could have done to mitigate damages "are questions of fact that cannot be resolved on summary judgment"). There is no basis, under *Ormesa* or otherwise, to preclude Dr. Finnerty's approach as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' summary judgment motion seeking to preclude the opinion of CoBank's damages expert, Dr. John D. Finnerty.

Dated: New York, New York
      April 30, 2018

Respectfully submitted,

By: /s/ Shawn Patrick Regan
    Shawn Patrick Regan
    Joseph J. Saltarelli
    Peter Mustalish
    Jennifer Bloom
    Silvia N. Ostrower
    HUNTON ANDREWS KURTH LLP
    200 Park Avenue, 52nd Floor
    New York, New York 10166
    (212) 309-1000

*Attorneys for Defendant CoBank, ACB*

79380.000012 EMF_US 69052784v15

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, I served the foregoing on all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities, and by electronic mail.

/s/ Shawn Patrick Regan
Shawn Patrick Regan