UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AMCO INSURANCE COMPANY, *et al.*,       :

                Plaintiffs,       :

    - against -       :       No. 16-cv-4422 (LTS)(HBP)

COBANK, ACB,       :

                Defendant.       :
-------------------------------------------------------------X

## COBANK'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Shawn Patrick Regan
Joseph J. Saltarelli
Jennifer Bloom
Silvia N. Ostrower
Peter Mustalish
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

*Attorneys for Defendant
CoBank, ACB*

# TABLE OF CONTENTS

Page

I.  PLAINTIFFS' OPPOSITION MAKES CLEAR THIS CASE IS RIPE FOR
    SUMMARY JUDGMENT IN COBANK'S FAVOR. ...........................................................1

   A. Plaintiffs Concede They Merely Disagree with the Legal Conclusions
      to Be Drawn from the Undisputed, Material Facts. .........................................................1

   B. CoBank's Purpose in Issuing the 2008 Notes Is Relevant to the Court's
      Determination of the Plain Meaning of the Regulatory Event Provision. ........................1

      1. In Determining the Plain Meaning of the Regulatory Event Redemption
         Provision, It Is Proper for the Court to Consider CoBank's Purpose in
         Issuing the 2008 Notes, as Expressly Stated in the Offering Circular. ......................2

      2. There Is No Genuine Dispute that the Purpose of the 2008 Notes
         Was to Increase CoBank's Regulatory Capital Ratios. .............................................3

      3. CoBank's Option to Redeem the 2008 Notes upon the Occurrence of a
         Regulatory Event Continued Throughout the Lifetime of the 2008 Notes,
         Irrespective of the 20% Annual Reduction During the Last Five Years
         Before Maturity. ........................................................................................................4

      4. Plaintiffs' Assertions Regarding CoBank's Disclosure of the FCA's
         Treatment of the 2008 Notes Do Not Defeat Summary Judgment Because
         They Do Not Bear on Plaintiffs' Claims and They Are Factually
         Unsupportable. ..........................................................................................................5

   C. CoBank Has No Burden to Prove that the Proceeds of the 2008 Notes "Are
      or Ever Were Included in Total Assets" Under the T1LR or that
      CoBank "Still Possessed the Proceeds" at the Time of the Redemption. ........................6

II. PLAINTIFFS' REMAINING ARGUMENTS ARE INSUFFICIENT TO
    DEFEAT SUMMARY JUDGMENT. .........................................................................................8

III. PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF
     GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW. ......................11

CONCLUSION ................................................................................................................14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adams v. Suozzi*,
  433 F.3d 220 (2d Cir. 2005)..................................................................................................3

*Alter v. Bogorician*,
  1997 WL 691332 (S.D.N.Y. Nov. 6, 1997), *aff'd*, 700 F. App'x 22 (2d Cir.
  2017) .....................................................................................................................................11

*Am. Furniture Co. v. Extebank*,
  676 F. Supp. 455 (E.D.N.Y. 1987) ........................................................................................1

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................................13

*Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*,
  697 N.Y.S.2d 128 (2d Dep't 1999).......................................................................................11

*Butvin v. DoubleClick, Inc.*,
  2001 WL 228121 (S.D.N.Y. Mar. 7, 2001) .........................................................................11

*Contemporary Mission, Inc. v. U.S. Postal Serv*,
  648 F.2d 97, 107 n. 14 (2d Cir. 1981), *aff'd* 372 F. App'x. 180 (2d Cir. 2010).......................13

*Cooper v. Gottlieb*,
  2000 WL 1277593 (S.D.N.Y. Sept. 8, 2000).......................................................................10

*In re Coudert Bros.*,
  487 B.R. 375 (S.D.N.Y. 2013)................................................................................................3

*Doyle v. Mastercard Int'l Inc.*,
  2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) (Swain, J.)....................................................11

*Fujitsu Ltd. v. Fed. Express Corp.*,
  247 F.3d 423 (2d Cir. 2001)..................................................................................................13

*Holtz v. Rockefeller & Co., Inc.*,
  258 F.3d 62 (2d Cir. 2001)....................................................................................................13

*James L. Turkle Trust v. Wells Fargo & Co.*,
  2012 WL 2568208 (N.D. Cal. July 2, 2012)........................................................................10

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005)..................................................................................................13

*Kass v. Kass*,
    91 N.Y.2d 554 (1988) .................................................................................................3

*M/A-COM Sec. Corp. v. Galesi*,
    1989 WL 115953 (S.D.N.Y. Sept. 27, 1989) ..............................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................................13

*In re New York Cmty. Bancorp, Inc., Sec. Litig.*,
    448 F. Supp. 2d 466 (E.D.N.Y. 2006) .........................................................................4

*Pujals v. Standard Chartered Bank*,
    533 F. App'x 7 (2d Cir. 2013) ................................................................................2, 3

*Rodriguez v. Schneider*,
    1999 WL 459813 (S.D.N.Y. June 29, 1999) ...............................................................6

*Salahuddin v. Mead*,
    174 F.3d 271 (2d Cir. 1999) ......................................................................................10

*Tennenbaum Cap. Partners LLC v. Kennedy*,
    2009 WL 2913679 (S.D.N.Y. Sept. 11, 2009) (Swain, J.) .........................................13

*This is Me, Inc. v. Taylor*,
    157 F.3d 139 (2d Cir. 1998) ........................................................................................2

*Thompson v. Gjivoje*,
    896 F.2d 716 (2d Cir. 1990) ........................................................................................3

*Tian Long Fashion Co. v. Fashion Ave. Sweater Knits, LLC*,
    2016 WL 4097801 (S.D.N.Y. July 25, 2016) ..............................................................2

*Trans Sport, Inc. v. Starter Sportswear, Inc.*,
    964 F.2d 186 (2d Cir. 1992) ......................................................................................13

*In re Trusteeship Created by Am. Home Mortg. Inv. Trust
2005-2*, 2014 WL 3858506 (S.D.N.Y. July 24, 2014) ......................................................2

*Wells Fargo Bank, N.A. v. Fin. Sec. Assur. Inc.*,
    504 F. App'x 38 (2d Cir. 2012) ...................................................................................2

**Other Authorities**

Fed. R. Civ. P. 56 ..............................................................................................................1

L.R. 56.1(d) ...................................................................................................................6, 9

RESTATEMENT (SECOND) OF CONTRACTS § 202(2) ..........................................................2

Defendant CoBank, ACB ("CoBank") respectfully submits this Reply Memorandum of Law in further support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## I. PLAINTIFFS' OPPOSITION MAKES CLEAR THIS CASE IS RIPE FOR SUMMARY JUDGMENT IN COBANK'S FAVOR.

### A. Plaintiffs Concede They Merely Disagree with the Legal Conclusions to Be Drawn from the Undisputed, Material Facts.

Plaintiffs concede that "[m]uch of CoBank's motion is based on facts which Plaintiffs do not dispute" and that Plaintiffs merely "disagree with the legal conclusions to be drawn from those facts . . . ." (Pl. Opp. Br., Dkt. No. 124, at 4.) Summary judgment is warranted in precisely these circumstances, *i.e.*, where the material facts are not in dispute and the parties disagree only on the legal conclusions to be drawn from them. *Am. Furniture Co. v. Extebank*, 676 F. Supp. 455, 456 (E.D.N.Y. 1987) (summary judgment proper where the "only dispute concerns the legal conclusions to be drawn from the [undisputed] facts").

While Plaintiffs attempt to dispute "two facts" (Pl. Opp. Br. at 4-5), they simultaneously assert that those facts are "legally irrelevant and therefore immaterial" to determining whether a Regulatory Event occurred. (*Id.* at 4; *accord id.* at 9-11 (asserting CoBank's purpose in issuing the 2008 Notes is "irrelevant"); *id.* at 13 ("whether or not the Notes decreased CoBank's T1LR is irrelevant to determining whether a Regulatory Event occurred"); *accord id.* at 12 ("the effect of the Notes on [CoBank's] ratios [is] legally irrelevant"). Plaintiffs cannot withstand summary judgment on the ground that they dispute two facts *they* deem "legally irrelevant and immaterial." To withstand summary judgment, a non-movant bears the burden of showing a genuine dispute exists over a fact that *is* material. Plaintiffs have not done so.

### B. CoBank's Purpose in Issuing the 2008 Notes Is Relevant to the Court's Determination of the Plain Meaning of the Regulatory Event Provision.

Plaintiffs first assert that the Court should ignore, as "legally irrelevant and therefore

immaterial," the fact that CoBank's purpose in issuing the 2008 Notes was to "to increase its regulatory capital ratios ...." (Pl. Opp. Br. at 4-5 (citing CoBank SOF, Dkt. No. 107, ¶ 35); *accord id.* at 9-11 (asserting CoBank's purpose in issuing the 2008 Notes is "irrelevant").) The law is clear that the Court should consider the purpose of the 2008 Notes in interpreting the Regulatory Event provision.

> 1. In Determining the Plain Meaning of the Regulatory Event Redemption Provision, It Is Proper for the Court to Consider CoBank's Purpose in Issuing the 2008 Notes, as Expressly Stated in the Offering Circular.

Plaintiffs argue that, in determining the plain meaning[1] of the Regulatory Event provision, the Court must ignore the Offering Circular on the ground that it is extrinsic evidence. (Pl. Opp. Br. at 11.) But as numerous courts have recognized, it is appropriate for a court to consider an Offering Circular in determining plain meaning because it is among "all writings forming part of a single transaction." *Wells Fargo Bank, N.A. v. Fin. Sec. Assur. Inc.*, 504 F. App'x 38, 40 (2d Cir. 2012) (holding district court properly considered "Prospectus Supplement and other transaction documents related to" contract) (citing *This is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)); *Pujals v. Standard Chartered Bank*, 533 F. App'x 7, 9 (2d Cir. 2013) (considering Offering Memorandum and Subscription Agreement in interpreting an unambiguous purchase letter agreement); *In re Trusteeship Created by Am. Home Mortg. Inv. Trust 2005-2*, 2014 WL 3858506, at **2, 20-21 (S.D.N.Y. July 24, 2014) (considering Private Offering Memorandum, Prospectus, and Term Sheet when interpreting Indenture); RESTATEMENT (SECOND) OF CONTRACTS § 202(2) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together."). And it is particularly

---

[1] CoBank agrees this is a "plain meaning" case, as reflected by its opening brief. *Cf.* Pl. Opp. Br. at 3 (asserting plain meaning arguments are "glaringly missing" from CoBank's opening brief). While the Regulatory Event provision may be complex (necessarily, given the complexity of the regulatory capital rules underlying the provision), it is not ambiguous. *See Tian Long Fashion Co. v. Fashion Ave. Sweater Knits, LLC*, 2016 WL 4097801, at *5 (S.D.N.Y. July 25, 2016) ("That a text is complex or imperfect does not mean it is ambiguous.").

appropriate for the Court to consider the purposes and circumstances of the transaction. *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) ("[A] court need not turn a blind eye to context. Rather 'a court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish.'") (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)); *Kass v. Kass*, 91 N.Y.2d 554, 566 (1988) (court may consider evidence of "the circumstances under which [agreement] was executed"); *Adams v. Suozzi*, 433 F.3d 220, 228 (2d Cir. 2005) (contract must be "interpreted as to give effect to its general purpose").

Additionally, consideration of the Offering Circular and purpose of the 2008 Notes is appropriate here because the form Accredited Investor Letter annexed as Exhibit C to the Form of Security (both of which are exhibits to the Fiscal Agency Agreement) specifically refers to the Offering Circular and required each Accredited Investor to confirm it had received the Offering Circular and is "relying [on it] in making its investment decision with respect to the Notes." (Regan Decl., Dkt. No. 105, Ex. 14 at A-20.) "[W]here a writing expressly refers to ... another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." *Pujals*, 533 F. App'x at 9 (considering offering memorandum and agreement).

    2.    There Is No Genuine Dispute that the Purpose of the 2008 Notes Was to Increase CoBank's Regulatory Capital Ratios.

Plaintiffs admit the purpose of the 2008 Notes was "to increase [CoBank's] regulatory capital ratios" (Pl. Resp. to CoBank SOF, Dkt. No. 123, ¶ 35), but they attempt to conjure a factual dispute by noting that the Offering Circular stated the proceeds "may also be used 'for general corporate purposes.'" (Pl. Opp. Br. at 5.) The fact that CoBank included a customary boilerplate reservation that proceeds of the 2008 Notes may be used for "general corporate purposes" does not create a genuine dispute as to whether the purpose of the 2008 Notes was to

3

increase the bank's regulatory capital ratios. (Pl. Resp. to CoBank SOF ¶ 35 (admitting "the 2008 Notes Offering Circular stated that 'CoBank will use the net proceeds from the sale of the Notes to increase its regulatory capital ratios pursuant to FCA regulations and for general corporate purposes'").) There is no basis for Plaintiffs to assert CoBank must "demonstrate that it issued the Notes *solely* to increase its leverage ratios." (Pl. Opp. Br. at 10 (emphasis added).)[2]

> 3. CoBank's Option to Redeem the 2008 Notes upon the Occurrence of a Regulatory Event Continued Throughout the Lifetime of the 2008 Notes, Irrespective of the 20% Annual Reduction During the Last Five Years Before Maturity.

Similarly, no genuine, material dispute is created by the fact that the principal amount of the 2008 Notes that CoBank could exclude from the denominator of the NCR decreased by 20% for each of the last five years prior to the stated maturity date, *i.e.*, 2014-2018 (the "20% Stepdown" provision). (*See id.* at 5, 12.) CoBank's option to redeem was a matter of contract — hence, Plaintiffs assert breach of contract claims — and nothing in the language of the Regulatory Event provision (or elsewhere) states that CoBank's *redemption right* was diminished during the final five years or depended on what percentage of the proceeds remained amenable to favorable capital treatment.[3] (*See* Regan Decl. Ex. 14 at A-9.) By its terms, CoBank's right continued without change throughout the lifetime of the 2008 Notes.[4]

---

[2] In any event, use of the proceeds to increase regulatory capital ratios would be within "general corporate purposes." *E.g., In re New York Cmty. Bancorp, Inc., Sec. Litig.*, 448 F. Supp. 2d 466, 483 (E.D.N.Y. 2006) (granting motion to dismiss on finding prospectus' statement that proceeds "would be used for 'general corporate purposes' was broad enough to include" investment activity defendant allegedly did not adequately specify).

[3] The Regulatory Event provision expressly stated that the 20% Stepdown would not constitute a Regulatory Event. (Regan Decl. Ex. 14 at A-9.) It could have stated, but plainly did not state, that CoBank's Regulatory Event redemption option was different during the 20% Stepdown period. And maintaining that option during the Stepdown period was sensible. (*See* Pl. Opp. Br. at 12 (noting that, even as of April 16, 2016, CoBank would have been able to exclude $80,937,000 from the NCR denominator under the old regulatory capital rules).)

[4] Plaintiffs also assert that, during the rulemaking, CoBank "not once ... never once" "argue[d] for or support[ed] a position that would afford treatment of the Notes consistent with its 'purpose' for issuing them." (*Id.* at 13.) CoBank was not obligated to take any such position before the FCA, and Plaintiffs cite nothing to the contrary. (*See infra* pp. 11-12.) And, in any event, Plaintiffs' assertion is belied by their own 56.1 Statement, which states that, in August 2013, Mr. Burlage "asked if the FCA will include transition rules for third party capital that will be impacted by the new regulations. Sub debt, for example, will no longer count as Tier 1 capital and will be excluded from the leverage ratio which replaces the net collateral ratio." (Pl. SOF, Dkt. No. 121, ¶ 207.)

4.  **Plaintiffs' Assertions Regarding CoBank's Disclosure of the FCA's Treatment of the 2008 Notes Do Not Defeat Summary Judgment Because <u>They Do Not Bear on Plaintiffs' Claims and They Are Factually Unsupportable.</u>**

Finally, Plaintiffs assert the Court should ignore CoBank's stated purpose for issuing the 2008 Notes on the theory that "[n]o potentially relevant party – including the counterparties to the Security and the Fiscal Agency Agreement, and the investors themselves – was ever apprised that the Notes' ability to increase CoBank's NCR was contingent on CoBank seeking, and receiving, special treatment of the Notes from the FCA." (Pl. Opp. Br. at 11.) First, there is no evidence that CoBank obtained "special" treatment from the FCA with respect to regulatory capital treatment of the 2008 Notes.[5] Second, whether CoBank "apprised" the initial purchasers and Fiscal Agent of these facts does not bear on any element of Plaintiffs' contract claims.[6] Third, even if such disclosures were material to Plaintiffs' claims (they are not), it is beyond dispute that the initial purchasers and Fiscal Agent in fact were apprised that regulatory treatment of the 2008 Notes, including eligibility for exclusion from Total Liabilities under the NCR, was subject to the FCA's approval and continued discretion.[7] Indeed, Plaintiffs' counsel questioned CoBank deposition witnesses about documents reflecting that the initial purchasers and Fiscal

---

[5] The undisputed evidence shows CoBank merely sought "confirmation" from the FCA as to the regulatory treatment to be afforded the 2008 Notes. (*See* CoBank Opp. Br. at 25.) Indeed, the point is reflected in questions by Plaintiffs' own counsel when deposing CoBank witness Andrew Jacob. (*See* Regan Reply Decl. Ex. 43 (Jacob Dep.) 40:23-41:10 ("Q: . . . you would agree that that paragraph is CoBank's request that the FCA *confirm* certain regulatory treatment, correct? A: Based on the language, they're requesting the *confirmation* of, yes. Q: So they're agreeing for *confirmation*, …, correct?") (Emphases added).)

[6] Plaintiffs have asserted contract-based claims that hinge on whether a Regulatory Event, as defined in the Form of Security, occurred. They have not asserted a claim for fraudulent inducement or misrepresentation under statutory or common law based on adequacy of disclosures. Indeed, Plaintiffs argue that statements in the Offering Circular are "irrelevant and immaterial." (Pl. Opp. Br. at 4, 9-11.)

[7] The closing documents CoBank shared with counsel for the initial purchasers, Sullivan & Cromwell LLP, and the Fiscal Agent, Emmet Marvin & Martin LLP, included "CoBank's request letter to the FCA [seeking confirmation of the regulatory capital treatment] . . . and the FCA's response letter . . . informing CoBank that the Notes will qualify" for favorable regulatory capital treatment. (Regan Reply Decl. Ex. 45 at 10654, 10656.) That correspondence made clear that FCA's "regulatory capital treatment of subordinated debt could change in the future if we revise our regulations, or we determine that subordinated debt poses safety and soundness concerns, or we change our opinion of the loss-absorbing characteristics of subordinated debt." (Regan Decl. Ex. 10 at 17971.) Thus, there can be no genuine dispute as to whether CoBank disclosed that its "ability to exclude the Notes from 'total liabilities' in its NCR denominator … was subject to the FCA's continued discretion." (Pl. Opp. Br. at 11.)

5

Agent were apprised of this information. (*See, e.g.*, Regan Decl. Ex. 10 at 17961-63, 17969-71; Regan Reply Decl. Ex. 43 (Jacob Dep.) 39:8-44:4; *id.* Ex. 44 (McPhillips Dep.) 146:13-154:24.)

### C. CoBank Has No Burden to Prove that the Proceeds of the 2008 Notes "Are or Ever Were Included in Total Assets" Under the T1LR or that CoBank "Still Possessed the Proceeds" at the Time of the Redemption.

Plaintiffs purport to dispute that "[u]nder the terms of the [2014] Proposed Rule, the proceeds of CoBank's 2008 Notes were to be included in Total Assets (the denominator of the T1LR)," claiming there is no evidence that "the proceeds of the Notes are, or ever were, included in 'Total Assets' for purposes of [CoBank's] T1LR calculations." (Pl. Opp. Br. at 5.)

First, Plaintiffs' argument is a pure red-herring premised on their altering the statement in paragraph 43 of CoBank's 56.1 Statement, which stated that "[u]nder the terms of the *Proposed Rule*, the proceeds of CoBank's 2008 Notes were to be included in Total Assets (the denominator of the T1LR)." (CoBank SOF ¶ 43 (emphasis added).) That fact, along with several others, is material only insofar as it rebuts Plaintiffs' assertion that, when CoBank announced the Redemption, it lacked sufficient information to understand how the 2008 Notes were to be treated under the new regulatory capital requirements. (*E.g.*, Second Am. Compl. ¶ 133; *see also* CoBank SOF ¶¶ 38-52; CoBank Br., Dkt. No. 109, at 9-10, 14; CoBank Opp. Br., Dkt. No. 128, at 16-18.) CoBank need not (and could not) show that "the proceeds of the Notes are, or ever were, included in 'Total Assets' for purposes of its T1LR calculations" (Pl. Opp. Br. at 5, 13), because the 2008 Notes were redeemed before CoBank was required to calculate its T1LR under the new rules, just as contemplated by the forward-looking redemption language.

Second, as to the actual statement in paragraph 43, Plaintiffs fail to establish a genuine dispute because their response does not cite to a single evidentiary source.[8] Moreover, Plaintiffs

---

[8] *See* L.R. 56.1(d) (each denial of a material fact "*must* be followed by citation to evidence ....") (emphasis in original); *Rodriguez v. Schneider*, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("If the non-movant

6

acknowledge that CoBank's 30(b)(6) witness's testimony "states that, as a general rule, the subordinated debt proceeds would be considered assets, *i.e.*, included in the denominator of the T1LR, but CoBank's subordinated debt would not qualify as capital, *i.e.*, the numerator of the T1LR." (*Id.* at 5-6.) Their protest that Mr. Burlage "only referr[ed] generically to subordinated debt" and "never mention[ed] the proceeds of the Notes specifically" (*id.* at 6) is particularly misguided since (i) Plaintiffs' counsel's questions referred to subordinated debt generally, not the 2008 Notes specifically[9], and (ii) it is undisputed the 2008 Notes were subordinated debt.

Finally, Plaintiffs cannot defeat summary judgment on the theory that CoBank is required to show that it "still possessed the proceeds of the Notes" or their speculation that "it is entirely plausible – probable even – that the proceeds of the Notes were depleted between 2008 and 2016." (Pl. Opp. Br. at 6.) There is no basis to assert that CoBank has a burden to prove that at the time of the Redemption it "possessed" the actual proceeds of the 2008 Notes. The question in this suit is whether the undisputed facts constituted a Regulatory Event. Nothing in the provision requires that CoBank show it still "possessed the proceeds" of the 2008 Notes. That this question is utterly irrelevant to the issues in this suit is reflected in the fact that, over the course of more than two years of litigation, Plaintiffs never sought discovery of whether CoBank

---

asserts that a fact claimed by the movant to be undisputed is actually in dispute, the non-movant must cite evidence on the record to support its contention."). While Plaintiffs "object" to paragraph 43 and assert CoBank "failed to provide … evidence" to support the statement, CoBank plainly included evidence supporting what paragraph 43 says.

[9] The testimony cited by Plaintiffs was as follows:

Q: So in the leverage ratio, Tier 1 capital is divided by assets. Can you explain to me how *subordinated debt* would no longer be eligible for exclusion from liabilities for the purposes of measuring Tier 1 capital divided by assets, which is the Tier 1 leverage ratio test?

A: You know, so the proceeds from the subordinated debt would be in the assets. And we don't get to include the subordinated debt as capital. So an issuance of subordinated debt [in] the new regulatory capital framework reduces our Tier 1 leverage ratio. In our prior regulatory capital framework, an issuance of subordinated debt increases the net collateral ratio.

Q: Okay. So your assets are more because you include the *proceeds of subordinated debt* in your assets; right?
A: Right.
Q: The asset number goes up. Do you agree?
A: Yes.

(Regan Reply Decl. Ex. 46 (Burlage Dep.) 202:4-25 (emphasis added).)

7

"still possessed the proceeds."[10] In any event, Mr. Burlage testified that the proceeds of the 2008 Notes *were* included in the bank's assets but excluded from its liabilities for purposes of calculating the NCR. (Regan Reply Decl. Ex. 46 (Burlage Dep.) 202:19-25, 257:13-21.)[11]

## II. PLAINTIFFS' REMAINING ARGUMENTS ARE INSUFFICIENT TO DEFEAT SUMMARY JUDGMENT.

None of Plaintiffs' other arguments is sufficient to withstand summary judgment.

Plaintiffs argue "it is immaterial" "that the NCR and T1LR are both non-risk weighted ratios." (Pl. Opp. Br. at 14.) That Plaintiffs argue this core similarity between the NCR and T1LR is "immaterial" undermines the credibility of every argument Plaintiffs advance. The principal purpose of each non-risk-weighted leverage ratio is to "constrain[] the buildup of leverage in the System, which the risk-based regime is not designed to do." (RJN, Dkt. No. 106, Ex. 7 at 52821; *see also* RJN Ex. 2 at 42098 (observing NCR is designed to ensure safety and soundness); RJN Ex. 1 at 38524; CoBank Resp. to Pl. SOF ¶ 260; Novod Decl., Dkt. No. 103, Ex. 73 at 12 (describing NCR as "similar to the Tier 1 leverage ratio ...").)

Plaintiffs argue that "when the NCR was adopted ... there was no discussion of the import of non-risk weighting" and "[t]his rationale ... was never discussed in connection with adopting the NCR." (Pl. Opp. Br. at 15.) Actually, the Proposed Rule for the NCR stated: "This ratio would also provide the overall protection against other risks that a leverage (*i.e.*, total assets) ratio is intended to address *and that ratios based on risk-adjusted assets do not fully*

---

[10] Whether CoBank "depleted" or used the proceeds from the 2008 Notes for a "general corporate purpose" would also be irrelevant because, regardless of how CoBank deployed the proceeds, its NCR would remain higher than if it had obtained funds for such uses through different means (*e.g.*, Systemwide debt, which did not enjoy the same favorable capital treatment as subordinated debt). The 2008 Notes increased CoBank's NCR regardless of how it utilized the 2008 Notes proceeds. There is no basis to dispute this.

For similar reasons, Plaintiffs do not create a genuine dispute with their attempted denial of CoBank's SOF ¶ 59, wherein Plaintiffs assert "[t]here is no evidence that the 'proceeds of CoBank's 2008 Notes' were still possessed by CoBank ... after the issuance ... such that they 'were to be included in Total Assets (the denominator of the T1LR)'." Moreover, as to ¶ 59 specifically, Plaintiffs again fail to cite any contravening evidence in the face of clear supporting evidence from CoBank. *See supra* n.8.

[11] Plaintiffs' denial of paragraph 58 is: (i) unsustainable given Mr. Burlage's testimony, and (ii) insufficient to create a genuine dispute because Plaintiffs fail to support their denial with any evidence, *see supra* n.8.

*provide for.*" (RJN Ex. 1 at 38525 (emphasis added).) The CRS article cited by Plaintiffs (Pl. Opp. Br. at 15), *U.S. Implementation of the Basel Capital Regulatory Framework,* does not even mention the FCA, let alone discuss its regulatory framework or the history of the NCR.

Plaintiffs argue that the "FCA's view of what '[c]omparable' meant [is] irrelevant" because the "FCA was not a party to the Security or the [FAA]" and, although it "asked that certain text be added" to the Regulatory Event definition, it "issued this requirement in 2007." (*Id.* at 16.) But insofar as the phrase "comparable regulatory capital requirements" was added at the direction of the FCA within weeks of the FCA announcing a proposed rulemaking to consider adoption of new rules, including a T1LR, Plaintiffs' claim that the FCA's views are "irrelevant" is unsustainable.[12] The undisputed facts regarding how the "comparable" clause was added to the 2008 Notes[13] are relevant, should not be excluded from the Court's consideration, and validate that a Regulatory Event occurred. (*See* CoBank Opp. Br. at 6-9.)

Plaintiffs argue it "is legally meaningless" that "on March 10, 2016, CoBank received a notification from the FCA of the adoption of the Final Rule." (Pl. Opp. Br. at 17 (quotation omitted).) But issuance of the FCA's notification is perhaps the most legally meaningful fact in this case. Together with the publicly available information regarding the Proposed Rule and CoBank's knowledge from the rulemaking process, notification from the FCA of adoption of the Final Rule provided all the information CoBank needed to confirm that the 2008 Notes would no

---

[12] While not necessary to CoBank's summary judgment motion, Plaintiffs assert that the FCA's views are "irrelevant" likely because Mr. Burlage testified at his deposition that, well before CoBank announced the redemption, he had asked Becky Orlich, the FCA's Senior Counsel and principal contact on the rulemaking (*see* RJN Ex. 7 at 52814; Regan Reply Decl. Ex. 43 (Jacob Dep.) 32:16-33:2), "if she thought that the issuance of a new capital regulation would trigger a regulatory event redemption .... [and] Ms. Orlich said ... 'It's obvious, isn't it?'" (Regan Reply Decl. Ex. 46 (Burlage Dep.) 387:15-389:6.)

[13] These facts are set forth in ¶¶ 21-26 of CoBank's SOF. While Plaintiffs nominally purport to dispute paragraphs 22 and 23 (again, contrary to Rule 56.1(d), without citation to any evidence whatsoever, *see supra* note 8), they admit the substance of those paragraphs. They state that the FCA's comments initially arose in the context of "the definition of 'Regulatory Event' in the ... Series C" Term Sheet. (*See* Pl. Resp. to CoBank SOF ¶¶ 22-23.) CoBank does not assert otherwise. (*See* SOF ¶ 21 and subheading D.) There is no genuine dispute about these facts.

longer be eligible for exclusion from total liabilities for purposes of calculating CoBank's NCR or the T1LR, thereby triggering a Regulatory Event. (*See* CoBank Opp. Br. at 16-18.)

Finally, Plaintiffs challenge CoBank's view "that use of the word 'shall' in the Regulatory Event definition 'express[es] futurity'" and they attempt to distinguish the *Turkle Trust* case on the ground that "*Turkle* involved use of the word 'will,' not 'shall.'" (Pl. Opp. Br. at 18.) According to Plaintiffs, "the Regulatory Event provision at issue here uses the word 'shall' ... which is *not* forward-looking, but rather denotes that a mandatory event must occur before a redemption is permissible." (*Id.* at 19 (emphasis in original).) But the Second Circuit disagrees. As then-Judge Sotomayor, joined by Judges Jacobs and Sand, explained:

> There is no doubt that "shall" is an imperative, but it is equally clear that it is an imperative *that speaks to future conduct*. Even the most demanding among us cannot reasonably expect that a person "shall" do something yesterday. Moreover, our analysis would be incomplete if we were to focus on the word "shall" without considering the entire ... phrase "shall be brought." Giving this phrase its most natural construction, it is a command that governs the circumstances in which an action yet to be initiated may "be brought."

*Salahuddin v. Mead*, 174 F.3d 271, 274-75 (2d Cir. 1999) (emphasis added). The same is true here. "Shall" "speaks to future conduct" or, as Merriam-Webster states, expresses "futurity." And it must be read "considering the entire statutory phrase" – that is, whether CoBank:

> Recei[ved] a notification ... to the effect that, whether as a result of a change in applicable law or regulation or otherwise, none of the [2008 Notes] shall any longer be eligible for ... (ii) exclusion from total liabilities for purposes of calculating the Bank's net collateral ratio or any comparable regulatory capital requirements under any successor regulations.

There is no dispute that CoBank received such notification. (CoBank Br. at 14-18.)[14]

---

[14] Plaintiffs' response to SOF ¶ 47 does not create a genuine dispute. The evidence cited by CoBank clearly establishes the facts therein. And Plaintiffs' single-word response of "Denied" is not sufficient to create a genuine dispute. *See supra* n.8; *Cooper v. Gottlieb*, 2000 WL 1277593, at *4 (S.D.N.Y. Sept. 8, 2000).

Nor does Plaintiffs' response to SOF ¶ 53 create a genuine dispute because (i) Plaintiffs fail to support their denial with any evidence, *see supra* n.8, and (ii) their purported denial "insofar as the Final Rule did not change ... the FCA's regulatory capital rules that were in place through December 31, 2016" is a strawman. Paragraph 53

### III. PLAINTIFFS' CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW.

Most of Plaintiffs' one-and-a-half page opposition on their implied covenant claim merely recites boilerplate legal principles not in dispute here.[15]

The remainder of Plaintiffs' argument is that they "have adduced facts regarding CoBank's course of conduct during the period when the FCA was considering what new regulations should be imposed on the System. . . ." (Pl. Opp. Br. at 20.) Specifically, Plaintiffs assert CoBank "lobbied for a Tier 1 unweighted leverage ratio" and "encouraged the FCA to implement new regulations" that "would subvert its purported purpose for issuing the Notes." (*Id.*) Plaintiffs' arguments cannot withstand summary judgment for several reasons.

First, Plaintiffs do not cite a single case that remotely supports a theory that the implied covenant can be breached by a party's participation in a regulatory rulemaking process. (*See* CoBank Opp. Br. at 22-23, n.20.) Plaintiffs are not asking the Court to apply or extend existing law, they are asking to fabricate new law out of whole cloth.

Second, there is no reasonable basis to conclude that CoBank impliedly agreed to refrain from participating in, or taking certain positions in, the FCA's regulatory capital rulemaking process. It was a matter of public record that, like other financial regulatory agencies that had prominently undertaken comprehensive rules revisions, the FCA had issued public Notices of

---

states that "[t]he Final Rule is a successor regulation to the ... rules that were in place *through December 31, 2016*." (CoBank SOF ¶ 53 (emphasis added).)

[15] *See* Pl. Opp. Br. at 19-20. Plaintiffs fail to cite a single analogous case where a plaintiff asserting an implied covenant claim withstood a summary judgment motion or prevailed on its own motion. For example, Plaintiffs cite *Butvin v. DoubleClick, Inc.*, 2001 WL 228121 (S.D.N.Y. Mar. 7, 2001), and *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128 (2d Dep't 1999). In both of these cases, however, the court found plaintiff failed to even meet a *pleading* standard for an implied covenant claim. *See Butvin*, 2001 WL 228121, at *8 (denying motion to amend complaint to assert claim because facts failed to state a claim); *Aventine*, 697 N.Y.S.2d at 130 ("At bar, even the most liberal reading of the amended complaint ... shows that they fail to sufficiently state" an implied covenant claim) (citations omitted). And this is not surprising. As this Court has observed, "'[e]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of the implied covenant of good faith and fair dealing has dismissed the latter claim as duplicative.'" *Doyle v. Mastercard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016) (Swain, J.) (quoting *Alter v. Bogorician*, 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997), *aff'd*, 700 F. App'x 22 (2d Cir. 2017).

11

Proposed Rulemaking with respect to new regulatory capital rules in the years and months preceding issuance of the 2008 Notes. (Novod Decl. Ex. 44 at 61568-69.) The 2008 Notes Offering Circular — and other documents provided, prior to issuance, to the initial purchasers and Fiscal Agent — plainly disclosed that "[t]he FCA may, in the future, make adjustments" to its regulatory capital rules. (Novod Decl. Ex. 40 at 7665.) And the *cover page*, in the second paragraph, of the Offering Circular highlighted that CoBank reserved the option to redeem the 2008 Notes should there occur certain changes in the regulatory capital treatment of the 2008 Notes. (*Id.* at 7645 (cover page).) *See M/A-COM Sec. Corp. v. Galesi*, 1989 WL 115953, at *3 (S.D.N.Y. Sept. 27, 1989) (granting summary judgment against implied covenant claim and observing "if ... such [constraints were in the parties'] contemplation ... such a provision relating thereto should have been incorporated into the ... Agreement").

Third, notwithstanding Plaintiffs' bald assertion that CoBank sought to deny Plaintiffs the benefits of the 2008 Notes by pushing for the Final Rule, the undisputed *evidence* shows that CoBank actually sought to delay — not accelerate — the rulemaking process and the concomitant regulatory change (CoBank Opp. Br. at 21-25) and "asked if the FCA will include transition rules for third party capital that will be impacted by the new regulations," specifically mentioning "[s]ub debt, for example ...." (Pl. SOF ¶ 207.) While Plaintiffs theorize that CoBank drove the FCA to adopt the new rules so as to "subvert [CoBank's own] purpose for issuing the Notes" (Pl. Opp. Br. at 20), *Plaintiffs'* description of the rulemaking process belies that assertion:

> The FCA issued this requirement [to add the phrase "or any comparable regulatory capital requirements" to the Regulatory Event definition] in 2007. At that time, neither the FCA, nor CoBank, nor anyone else knew that the T1LR would be adopted. Indeed, it took nearly ***nine*** years for the new regulations to be proposed, and nearly ***ten*** years for them to be implemented. The interim period consisted of significant discussion and debate among all Farm Credit System participants as to the various components of the new regulations.

(Pl. Opp. Br. at 16 (emphasis in original) (citing Pl. SOF, ¶¶ 152-217).) No reasonable factfinder

could accept Plaintiffs' tale, and summary judgment in favor of CoBank is warranted.

*   *   *

To defeat CoBank's motion for summary judgment, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts," and they "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)). Summary judgment cannot be defeated "on the basis of conjecture or surmise." *Trans Sport, Inc. v. Starter Sportswear, Inc.,* 964 F.2d 186, 188 (2d Cir. 1992). Plaintiffs must present evidence of facts that are "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Tennenbaum Cap. Partners LLC v. Kennedy*, 2009 WL 2913679, at *2 (S.D.N.Y. Sept. 11, 2009) (Swain, J.) (quoting *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)), *aff'd,* 372 F. App'x 180 (2d Cir. 2010). A material fact is one that can "affect the outcome of the suit under the ... law," and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Plaintiffs have not pointed to any evidence that raises a genuine dispute as to a material fact regarding redemption of the 2008 Notes. Instead they rely on bald denials, misdirection and a kitchen-sink approach to the issues, hoping that something will stick. Nothing does.

Based on the plain language of the 2008 Notes, the undisputed facts regarding their drafting and issuance, and the undisputed facts regarding the FCA's new rules, it is clear a Regulatory Event occurred. No reasonable factfinder could conclude otherwise.

## CONCLUSION

For these reasons and those set forth in its opening brief, CoBank's motion for summary judgment should be granted.

Dated: New York, NY
       May 24, 2018

Respectfully submitted,

By: _____
Shawn Patrick Regan
Joseph J. Saltarelli
Jennifer Bloom
Silvia N. Ostrower
Peter Mustalish
HUNTON ANDREWS KURTH LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000

*Attorneys for Defendant CoBank, ACB*

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2018, I served the foregoing on all counsel of record registered with the Court's ECF system, by electronic service via the Court's ECF transmission facilities, and by electronic mail.

_____
Shawn Patrick Regan